**LEE CHOY v. UNITED STATES.**
No. 6214.

Circuit Court of Appeals, Ninth Circuit.
April 13, 1931.

Ray J. O'Brien, of Honolulu, Hawaii, and Herbert W. Chamberlin, of San Francisco, Cal., for appellant.

Sanford B. D. Wood, U. S. Atty., and John Albert Matthewman, Asst. U. S. Atty., both of Honolulu, Hawaii, and George J. Hatfield, U. S. Atty., and I. M. Peckham, Asst. U. S. Atty., both of San Francisco, Cal.

Before RUDKIN, WILBUR, and SAWTELLE, Circuit Judges.

SAWTELLE, Circuit Judge.

This is an appeal from an order of the United States District Court for the Territory of Hawaii ordering the appellant, Lee Choy, alias Lee Uck Kwong, to be deported to the republic of China.

Appellant is a Chinese person who entered the territory of Hawaii on June 12, 1923. He obtained admission on the ground that he was a native-born citizen of Hawaii who had left the said territory on July 27, 1900, on the steamship Rio de Janeiro with his mother, Mrs. Ching Shee, a brother, and a sister. On September 17, 1923, a certificate of identity, signed by Richard L. Halsey, at that time chief immigration official in the territory, was issued to appellant.

On June 2, 1927, appellant was examined by the immigration authorities of Hawaii regarding his right to be in the United States. On that day, George A. Erbs, an immigration inspector, met appellant at the Aala Market and asked him for his certificate of identity. Appellant did not have it with him, whereupon Inspector Erbs accompanied him to his home, where appellant gave the certificate to the inspector who kept it. Thereafter, appellant was arrested and charged with obtaining admission into the United States by false and fraudulent representations and claim of United States citizenship. The case was called for trial April 12, 1929, and the defendant entered a plea of not guilty.

At the trial, the minutes of the meeting of the Board of Special Inquiry in 1923, relative to the issuance of certificate of identity to appellant, was introduced in evidence as United States Exhibit A. The record of the testimony given by the appellant just before he was arrested in June, 1927, and that on one Lee On were admitted as United States Exhibit B over the objection of appellant. Appellant objected to the said testimony on the ground that it was an ex parte statement and a hearsay statement taken without the presence of the appellant.

Inspector Erbs testified that three other persons: to wit, Lau Tin Ko, admitted September 25, 1913; Lau Tin Hoo, admitted June 24, 1916; and Auyoung Chuck Nam, admitted March 8, 1923, were admitted as Hawaiian born, and all claimed departure from Hawaii with Ching Shee on the steamship Rio de Janeiro which sailed July 27, 1900. This witness testified that the departure manifest showed that one "Mrs. Ching Shee," two children, and one infant left on the said steamer on that date, and that the manifest showed only one female and only one child.

Over the objection of appellant and with exception duly noted, the following was admitted in evidence: the complete immigration records of Lau Tin Ko (United States Exhibit C), Lau Tin Hoo (United States Exhibit D), and Auyoung Chuck Nam, (United States Exhibit E), the three previously entered alleged children of Mrs. Ching Shee; also, the testimony of A. E. Mott-Smith, former Secretary of the territory, that he had issued Hawaiian birth certificates to Lau Tin Ko and Lau Tin Hoo, on the application of their alleged father, Lau Moon.

Lau Jin, witness for the appellant, testified that he (the witness) had lived in Hawaii for thirty-eight years and knew appellant and his family before they all went to China in 1900; that he had seen and recognized appellant and his father in China about twenty years later, but that he had never seen appellant in the meantime; that he had seen and recognized appellant about three years before. The government, over appellant's objection, introduced into evidence (United States Exhibit G) statements made and signed by the witness upon his arrival in Honolulu, September 23, 1922.

Chu Ming, interpreter when appellant was examined by the immigration officials on June 2, 1927, testified that appellant never signed the record of his testimony taken just before his arrest (United States Exhibit B), but that he signed only the shorthand notes as taken down by the stenographer. The testimony was never read over to him, and, when appellant signed the shorthand book,

the contents were not translated back into Chinese for him.

Appellant moved to strike United States Exhibits A, B, D, C, and E, motion was denied, and exceptions noted. At the conclusion of the trial the court found "that the said Lee Choy, alias Lee Uck Kwong, did not establish by affirmative proof to the satisfaction of this court his lawful right to remain in the United States, and is found to be a person of the Chinese race and of Chinese descent who is an alien, born without the United States" and ordered his deportation. From which order appeal is taken.

■ The certificate of identity was prima facie evidence of the right of the appellant to be and remain in the United States until overcome by proof tending to establish that the same was issued improvidently or was fraudulently obtained. Leong Kwai Yin v. United States, 31 F.(2d) 738 (C. C. A. 9).

The government sought to overcome this prima facie case of the appellant by the introduction of certain records above referred to in order to show fraud on the part of the appellant in securing the certificate. Exhibit A, which contains the application of the appellant, Lee Choy, when he made application for admission to the United States in June, 1923, and in which appellant claims a departure record of Mrs. Ching Shee, two children and an infant on the steamship Rio de Janeiro on July 27, 1900, was referred to by counsel for the government in the examination of George A. Erbs, one of the government witnesses, and the witness was asked "if any other Chinese persons were admitted to this country at this port (Honolulu) on that departure record." To this question an objection was interposed and overruled, the court stating: "While the court is not going to permit this line of questioning on the theory that other records must be excluded, I am going to permit it to go in for what it is worth, to be considered with all the other evidence in the case."

The witness replied to the question in the affirmative and gave the names of Lau Tin Ko, Lau Tin Hoo, and Auyoung Chuck Nam.

Exhibit·B, as above stated, is a record of the testimony given by appellant just before he was arrested in June, 1927, and the testimony of Lee On. The objection to the testimony of Lee On was on the ground that said testimony of Lee On was an ex parte statement and a hearsay statement taken without appellant's presence.

Exhibits C, D, and E above referred to contain the complete immigration records of Lau Tin Ko, Lau Tin Hoo, and Auyoung Chuck Nam, respectively.

■ The court erred in admitting the testimony of the witness Erbs with reference to the admission of the Chinese persons above referred to, and in admitting the testimony of the witness A. E. Mott-Smith with reference to the issuance of the certificates to Lau Tin Ko and Lau Tin Hoo, also in admitting in evidence said Exhibit B, containing the testimony of Lee On, and Exhibits C, D, and E containing the records of admission of the previously entered children of Mrs. Ching Shee. Fong Lum Kwai, alias Fong Kock Tung v. United States (C. C. A. 9th) 49 F.(2d) 19, in an opinion by Judge Wilbur this day handed down.

In view of the testimony of the Chinese interpreter that the testimony of appellant taken by the immigration officials in 1927 was never translated back into Chinese for him, but that he merely signed the book containing the shorthand notes of the stenographer present at the time testimony was taken, it is very doubtful whether that record is admissible. However, there was no objection made on that ground. The objection made was that it was inadmissible because appellant was under illegal arrest, which objection is, of course, without merit.

In the opinion of the learned judge of the District Court he states: "The Government further introduced in evidence three separate records of the Immigration Inspector's Office (introduced as Exhibits 'C', 'D', and 'E'), showing that Lau Tin Ko, in February, 1914, Lau Tin Hoo, in September, 1916, Auyoung Chuck Nam, in May, 1923, had all secured admission into the United States and received certificates of identity as the sons of (under the departure records of Ching Shee who left Honolulu July 27, 1900, on the SS. 'Rio de Janeiro.' These last three exhibits were examined carefully by the Court, not for the purpose of visiting on the defendant the effects of fraud perpetrated by others, but for comparison with the defendant's own record, for the purpose of carefully scrutinizing same 'to the end that the exclusion and immigration laws may not be set at naught.' Leong Kim Wai v. Burnett [C. C. A.] 23 F.(2d) 789."

In a later paragraph of the opinion we find this significant expression: "The discrepancies and inconsistencies in all this testimony leave the Court in a very skeptical frame of mind with regard to the defendant's claims. These claims have the appearance of being spurious. And when the signi-

ficant and controlling showing in Exhibits 'C' and 'D' (particularly the former) that Lau Tin Ko and Lau Tin Hoo were the bona fide sons of Mrs. Ching Shee (i. e., Mrs. Lau Moon) is considered, there is no other conclusion possible but that the defendant obtained entry into this country by misrepresentation."

■ It thus appears that the court unconsciously allowed the erroneously admitted record to influence him in the consideration of the case. This is a striking illustration of the danger of getting into the record evidence not admissible under well-recognized rules. If these records were controlling in the decision of the case, it would seem that the defendant should be discharged from custody. In judicial proceedings the court is restricted in the reception of evidence to only such as meets the requirements of legal proof. In this case, the testimony of many of the witnesses referred to was taken in a nonjudicial proceeding to which appellant was not a party, and hence was inadmissible against him.

■ Counsel for the government, in the addendum to his brief filed herein, contends that, inasmuch as the appellant Lee Choy testified, both at the time of his entry in 1923 and at the trial in the lower court, that he is one of the children that went to China with his mother, Ching Shee, on the steamship Rio de Janeiro, sailing from Honolulu July 27, 1900, and that two brothers, Lee You Sung and Lee Yup Yip, and a sister went with him, that therefore the testimony given by Lau Moon in 1913 relating to his wife Ching Shee and their children, Lau Tin Ko, Lau Tin Hoo, and a daughter, all of whom went with him to China on the said steamship in 1900, was admissible in evidence under the exceptions to the Hearsay Rule relating to declarations of deceased members of a family as to matters of pedigree. This contention does not seem to call for serious consideration, for the obvious reason that the evidence does not establish the fact that Lau Moon is dead. Testimony relied upon is that of the witness Erbs, which is as follows:

"Q. Do you know anything of the whereabouts of Lau Tin Moon, the alleged father of these boys? A. I believe he died.

"Q. Have you any evidence? A. The San Francisco record which was transmitted here some time ago said that he had died in China." (Simply more hearsay.)

■ It is also contended that the testimony or declarations of said Lau Tin Ko and Lau Tin Hoo, who claim to be and were admitted as sons of said Lau Moon and Ching Shee, and who were shown to be somewhere on the mainland of the United States, come under the exceptions to the hearsay rule also. The answer to the latter contention is that these witnesses at the time of giving their testimony were shown to have been vitally interested in proving that they themselves, and not the appellant, were sons of Lau Moon and Ching Shee, and hence are shown not to be qualified to make their declarations admissible under the necessity principle.

. "The declarant must be disinterested; that is, disinterested in the sense that the declaration was not made in favor of his interest." Sugden v. St. Leonards, L. R. 1 P. D. 154; cited in Wigmore on Evidence, volume III, § 1420.

"In order to adhere as closely as possible to the policy of shutting out all vague, second-hand, and unauthenticated evidence, such exception is made in favor of proofs of declarations and reputation (of family history) only where the persons whose opinion and declarations are relied upon, besides being those most likely to be well informed as to the facts, were also, so far as appears, free from all possible inducement to misrepresent the truth themselves or from any danger of being misled by others so interested. * * * It is then received * * * because ordinarily, they could have no temptation to falsehood or misrepresentation on such a subject." People v. Fire Ins. Co., 25 Wend. (N. Y.) 220; cited in Wigmore, supra, § 1482.

"In cases of pedigree, (hearsay) is admitted, upon the ground of necessity, or the great difficulty, and sometimes, the impossibility, of proving remote facts of this sort by living witnesses, * * * there being no lis mota or other interest to affect the credit of their statement." Ellicott v. Pearl, 10 Pet. 434, 9 L. Ed. 475, Story, J.; Wigmore, supra, § 1481.

The judgment of the lower court is reversed.