## LEWIS v. UNITED STATES.
### No. 7428.

Circuit Court of Appeals, Ninth Circuit.
Dec. 21, 1934.

Milton E. Zener, of Pocatello, Idaho, for appellant.

J. A. Carver, U. S. Atty., and W. H. Langroise, Sp. Asst. U. S. Atty., both of Boise, Idaho.

Before WILBUR and GARRECHT, Circuit Judges.

WILBUR, Circuit Judge.

The appellant, an Indian, was convicted of murder and sentenced to life imprisonment. The victim was Mabel Sawyer, a 13 year old Indian girl, who disappeared from her home on the Bannock Indian Reservation in Idaho on the 9th day of October 1932, and whose decaying body was discovered December 4, 1932, on an isolated island on the reservation. From the condition of the body it was evident that she had been choked to death by means of a rag tied around her neck. The appellant was apprehended and confessed that he had killed the child during an attempt to have sexual relations with her. It is conceded that without the confession the evidence is insufficient to sustain conviction; with it, it is ample.

Appellant assigns as error the ruling of the court admitting the confession in evidence and certain rulings of the court in giving and refusing instructions relating to the weight and effect of a confession. At the defendant's request the jury was excused while evidence was received by the court bearing upon the question as to whether or not the confession was voluntary. On the vior dire the defendant took the witness stand and testified at great length concerning the circumstances under which he signed the written confession and made the oral confessions attributed to him, both prior and subsequent thereto, in an effort to convince the court that he was coerced and intimidated and cajoled by promises into making the confession. The testimony of the defendant taken on the voir dire occupies over 150 pages of the transcript. At the conclusion of the testimony the trial judge announced his conclusion as to the admissibility of the confession and overruled defendant's objections, whereupon the jury was recalled, and, in the presence of the jury, the government recalled the witnesses who had been present at the time of the confession and again ex-

amined them upon the question of whether or not the confession was voluntary. Thereafter the objection of the defendant to the admission of the confession was renewed and again overruled, and the confession was received in evidence. The defendant did not again take the stand to refute the testimony of the witnesses who had secured the confession nor in his own defense. It thus appears that the evidence before the court bearing upon the admissibility of the confession and the evidence before the jury upon the same subject were different, and that the ruling of the court admitting the confession was based upon one state of the evidence and the verdict of the jury upon another. This distinction is important in considering the assignments of error as to instructions given to the jury and the refusal of appellant's proposed instructions.

The appellant admitted to the officers that he had killed Mabel Sawyer. He reduced that testimony to writing and signed it. Subsequently he went with the officers to the scene of the crime and pointed out the particular localities in his house where the various incidents had occurred which he had described in his confession. Later, he went to the place where the body was found and described the situation at that point at the time the body was deposited there by him. There are several objections, exceptions, and assignments of error with reference to these separate confessions, but in the interest of brevity they will be treated as a single confession, in view of the fact that whatever influences operated upon the accused in making his initial admission of guilt, no doubt, were still operating upon his mind at the time of the subsequent statements.

■ The testimony on the voir dire taken before the court in the absence of the jury covers 385 pages, and the testimony taken in the presence of the jury on the question of whether or not the confession was voluntary occupies 49 pages of the transcript. To review this evidence would unreasonably extend this opinion. The question to be determined by this court with reference to the admissibility of the confession is whether or not the court abused its discretion in admitting the evidence. Mangum v. U. S. (C. C. A.) 289 F. 213, 215; Hale v. U. S. (C. C. A.) 25 F.(2d) 430, 437. In Mangum v. U. S., supra, this court, speaking through District Judge Bean, stated the rule thus: "But where on the trial of a criminal case a confession of the defendant is offered in evidence it becomes necessary for the trial court to ascertain and determine as a preliminary question of fact, whether it was freely and voluntarily made, and whether the previous undue influence, if any, had ceased to operate upon the mind of the defendant. In doing so, the court is necessarily vested with a very large discretion, which will not be disturbed on appeal, unless a clear abuse thereof is shown. State v. Rogoway, 45 Or. 601, 78 P. 987, 81 P. 234, 2 Ann. Cas. 431; State v. Squires, 48 N. H. 364."

In Hale v. U. S., supra, the Circuit Court of Appeals for the Eighth Circuit said: "This court has held that it is the duty of the court to determine whether or not an alleged confession by an accused person was voluntary or involuntary, and that it is error to permit the introduction of the evidence upon that question before the jury. The admissibility of such a statement is not primarily a question of fact for the jury, but it is the duty of the court alone to hear and decide it. Harrold v. Territory of Oklahoma (C. C. A. 8) 169 F. 47, 17 Ann. Cas. 868. To the same effect, Bram v. United States, 163 U. S. 532, 555, 18 S. Ct. 183, 42 L. Ed. 568; Rossi v. United States (C. C. A. 9) 278 F. 349, 353, 354; Perrygo v. United States, 55 App. D. C. 80, 2 F.(2d) 181; Mangum v. United States (C. C. A. 9) 289 F. 213, 215. Of course, as stated in the latter case, the court is necessarily vested with a very large discretion, which will not be disturbed on appeal, unless a clear abuse thereof is shown." See, also, State v. Dowell, 47 Idaho, 457, 276 P. 39, 68 A. L. R. 1061; State v. Andreason, 44 Idaho, 396, 257 P. 370; State v. Danelly, 116 S. C. 113, 107 S. E. 149, 14 A. L. R. 1420.

■ For brevity in discussing the legal questions involved we will adopt the statement of facts in the appellant's brief with reference to the obtaining of the confession, with certain explanatory interpolations in brackets: "To re-state the elements shown to have existed at the time the defendant was brought to the Pocatello jail on December 23, 1932, the following are the uncontradicted facts as viewed by the defendant: The defendant was finger printed by the officers on December 16, and at that time was told that after these prints were sent to the big man in Washington that he would be able to pick out the guilty man and representations were made to him that there was no escape from the accusation of this big man from Washington; that between that time and December 23, a photograph was faked by the officers purporting to show that the defendant's thumb print appeared upon the

tennis shoe worn by the deceased at the time she was murdered; that prior to the making a comparison of the defendant's finger print with the one on the shoe, the defendant was continually surrounded by police officers either working for the Federal Government or the Pocatello police department. He was persuaded to make a statement of his whereabouts [a false alibi] in what we feel to have been a very hurried and careless proceeding. He was then finger printed in the presence of a number of other Indians [who were also finger printed] and accused of the commission of the crime by a man represented to him to be the big man from Washington that the officers had previously promised him would point out the guilty party. He was then accused of the crime by Jensen and Bryon and told that their investigations had shown that he was not at the places named in his first statement. He was left alone with Jensen, a man who had for a long time been an officer on the Fort Hall Indian Reservation and with whom the defendant had had considerable difficulty and considered his enemy. Jensen very cleverly opened the conversation by reminding the defendant that Indians got off easy and called his attention to two specific cases known to both the defendant and Jensen where Indians had been treated very lightly. Jensen also told the defendant that one Abe Swanson had seen the defendant coming out of the bottoms on the Indian Reservation from the direction where the body was later found on the night that the crime was alleged to have been committed. This Jensen admitted was a falsehood. After dangling this hope before the defendant, Jensen then suggested to the defendant that he would never have committed the crime if he had not been drunk, and it is significant that according to Jensen's own statement that the defendant hesitated a moment and said he was drunk. This much is certain, that it required at least thirty minutes of continual questioning and prodding by Jensen before any statement was made by the defendant, and then the statement was obtained which in no way incriminated the defendant and which did not connect him with the commission of the crime. The defendant was then turned over to Carlson, the man whom the defendant believed to be the big man from Washington, who was in fact the Chief of Police of Idaho Falls, Idaho, and after more than an hour of gruelling [questioning] by this officer, made statements which the officers felt were worthy of being written down. This statement was,

according to the defendant's version, entirely dictated to him, and was not signed or at least, the last page of it was destroyed and never appeared in the case. The officers, not satisfied with this statement, again placed the defendant alone with the witness Carlson and finally, some eight or nine hours after the defendant had been brought to the city jail, obtained a written statement signed by the defendant which apparently satisfied them. We believe the record shows that the defendant was in poor physical condition and suffering from blood poisoning and heart trouble at the time he was subjected to this treatment by the officers. He had had nothing to eat since early morning of that day and had been in the custody of trained officers of the law during most of the day."

It will be observed that three elements are principally relied upon by the appellant in contending that the evidence should have been rejected by the trial court: First, that a false statement was made as to the evidence against him, and that a photograph showing his finger print upon the shoe of the dead girl was brought to his attention, thus tending to show that the officers had evidence pointing strongly to his guilt; second, that the defendant was reminded of what apparently was the fact, that Indians got off more easily than white persons accused of the same crime, and this general statement was fortified by reference to two specific cases with which the defendant was familiar; third, the defendant's testimony as to his fright, his physical condition, his suffering from blood poisoning and heart trouble. So far as the duty of the court in ruling upon the admissibility of the confession is concerned, unless he was satisfied that the testimony of the officers was false and the testimony of the defendant was true, he should have admitted the testimony and submitted to the jury upon the conflicting evidence the question of whether or not the confession was voluntary. If the undisputed testimony showed as a matter of law that the confession was involuntary, it was error to admit it, and we therefore turn to a consideration of that question.

With reference to the false statements and representations to the accused concerning the evidence against him, it has been held that to obtain the confession by direct statements of this sort does not render it involuntary. 1 R. C. L. § 107, p. 560; 15 Ann. Cas. 274; People v. Buffom, 214 N. Y. 53, 108 N. E. 184, Ann. Cas. 1916D, 966; 18 L. R. A. (N. S.) 840, note; 50 L. R. A. (N. S.) 1088, note; Jackson v. U. S. (C. C. A.) 102 F. 473,

483. We see no reason for questioning the soundness of these decisions. False statements as to the amount of incriminating evidence against the defendant might tend to make a guilty man confess, but would not have that tendency if the man were not guilty unless the statement as to the evidence was coupled with some promise or representation in regard to the advantage to be gained by a confession, or plea of guilty.

The representation to the defendant that Indians got off more easily because they were Indians did not tend to procure a confession whether true or false. The most that can be said of it would be that it tended to relieve the Indian from fear of capital punishment, and thus make him more comfortable in an admission of guilt than he would have been without that knowledge. There was here neither promise, express or implied, nor coercion, direct or covert. As to promises, see note 18 L. R. A. (N. S.) 768, 820; U. S. v. Lonardo (C. C. A.) 67 F.(2d) 883. In considering the effect of the evidence it should be stated that the appellant is 50 years old, speaks English fluently, is able to read and write, has been in contact with some of the officers who dealt with him in procuring his confession for many years, has been a member of the Indian council, and has corresponded with the authorities in Washington, D. C., and visited Washington, D. C., in protest against some of the conditions on the reservation. When the defendant took the stand on the voir dire he did not claim that he was influenced in making his statement by any hope of reward or promise held out to him, but testified that he made the statement because he was afraid and it was dictated to him and he knew he could tell the truth later. There was no error in the admission of the confession.

A more serious question arises concerning the instruction to the jury given by the trial court upon the matter of the confession, which is as follows: "Now, there has been introduced in evidence in this case what purports to be, and the government claims to be, certain statements or confessions of the defendant. The evidence with relation to these alleged statements or confessions was sufficient in the opinion of the court to justify their submission in evidence, and their submission to the jury for whatever you may consider them worth. If you believe beyond a reasonable doubt that these statements or confessions were made freely and voluntarily and without promise, or threats, or coercion, or persuasion, or improper influence, they should be given much weight by the jury. If, on the other hand, they were induced by threats, or direct or implied promises, or coercion, or overpersuasion, or fear, or improper influences, that should be considered in determining their weight, and if you think that they are entitled to be considered you should give them such weight as you may think them entitled to. The burden of proving that a confession is voluntary is upon the government, and must be free and voluntary. If you find that the alleged confession was involuntarily made by the defendant, that is, of course, you first find that a confession was made by the defendant then there is insufficient evidence in this case to convict the defendant of any offense."

The question of whether or not the competency of a confession should be submitted to the jury at all, and if so under what circumstances, is a matter upon which the courts are not in accord. We refer to a recent discussion of the question in a note in 85 A. L. R. page 870. See particularly cases cited from the federal courts. See, also, Wigmore on Evidence (2d Ed.) vol. II, §§ 860–861, and State v. Danelly, 116 S. C. 113, 107 S. E. 149, 14 A. L. R. 1420.

The appellant's position in regard to this instruction is indicated by the following quotation from his brief:

"The defendant's theory as to the admissibility of confessions under the circumstances shown by the evidence to exist in this case, has been fully discussed and sustained by authority under the argument of the Assignment of Error number 1 to 6 inclusive. We feel that a safe statement of the rule to be drawn from these authorities is that a confession or admission induced by threats, or direct or implied promises, or coercion, or over-persuasion, or fear, or improper influence is involuntary as a matter of law and that being involuntary it should be entirely disregarded and rejected, first, by the court if the court finds or should have found that the admissions and confessions were induced by the means stated above and, secondly that, if the question is submitted to the jury, that the jury must first determine the manner by which the admissions and confessions were obtained and, if they find that they were obtained by means condemned by the law, that then it is their duty, and they should be so instructed, to disregard and reject the admissions and confessions entirely and give them no consideration in reaching a verdict.

"A casual reading of the instructions set forth above, the same being the only in-

struction given by the court on the question of confessions or admissions, clearly shows, upon a cursory reading, that the jury was not instructed according to the law as contended for by the defendant. The instruction sets forth practically every element which would render the confessions and admissions involuntary as a matter of law, and, therefore, entitled to no consideration by the jury, and completes this statement by saying, in substance, that if the confessions and admissions were obtained in such manner as to render them involuntary as a matter of law, that this 'should be considered in determining their weight by you, and if you think that they are entitled to be considered you should give them such weight as you think them entitled to.' Nowhere in the instruction does the court tell the jury that if a confession or admission is obtained by threats, or direct or implied promises, or coercion, or over-persuasion, or fear, or improper influence, that such a finding renders the admissions and confessions involuntary as a matter of law, and therefore, to be entirely rejected by the jury, but on the contrary, instructed them that even though the confessions or admissions were so obtained, that they should be given such weight as the jury felt them entitled to. It is true that the court further instructed that if they should find that the alleged confessions were involuntarily made by the defendant, that then there was insufficient evidence to convict the defendant of any offense. These two instructions, in the defendant's view of the law, are totally and entirely inconsistent, as they amount to instructing the jury that they could find the confessions and admissions to be involuntarily made through influences condemned by law and yet give them consideration in reaching their verdict and, at the same time, instructing them that if they find the confessions were involuntary, without stating what elements rendered a confession involuntary, that they must acquit the defendant."

There is some inconsistency between the instruction to the jury that, if they found the confession to be involuntary, they must acquit, and the instruction that, if they found the confession was induced by threat, or direct or implied promises, or coercion or overpersuasion, or fear, or improper influence, this should be considered in determining the weight of the evidence, and that the confession should be given such weight as the jury thought it entitled to. The inconsistency in the instruction, however, is only apparent to the lawyer and not to the layman. Under the instruction the ultimate question for the consideration of the jury in determining whether or not they would consider the confession at all was whether or not the confession was free and voluntary. As stated by Mr. Justice Brandeis, speaking for the Supreme Court in Ziang Sung Wan v. U. S., 266 U. S. 1, 45 S. Ct. 1, 3, 69 L. Ed. 131, "a confession is voluntary in law if, and only if, it was, in fact, voluntarily made." And we think the converse is equally true, that it is only involuntary in law if, and only if, it was, in fact, involuntarily given. The fact that there were threats or promises or coercion or persuasion or fear or improper influences would not exclude the confession from the consideration of the jury, if in their opinion they did not render the confession involuntary. The ultimate question in that regard was as to whether or not the confession was voluntary, and this was left to the jury by the instruction. The instruction with reference to the weight to be given to the confession was obviously only to be applied by the jurors under the instruction in case they determined that the confession was voluntary. We do not, however, place our decision as to this instruction upon this ground alone, for we believe that the uncontradicted evidence offered before the jury upon the methods by which, and the circumstances under which, the confession was obtained, justified the court in instructing the jury that, as a matter of law, the evidence was competent, and that they were entitled and required to give it such weight as in their judgment it was entitled to under the circumstances. See Raarup v. U. S. (C. C. A.) 23 F.(2d) 547, certiorari denied, 277 U. S. 576, 48 S. Ct. 559, 72 L. Ed. 996. The court having ruled upon the voir dire that the evidence was admissible, the question of its competency could not be submitted to the jury where there was conflicting evidence upon the question as to whether the confession was free and voluntary. The Supreme Court, in Wilson v. U. S., 162 U. S. 613, 624, 16 S. Ct. 895, 900, 40 L. Ed. 1090, stated the relative function of the court and jury as follows: "When there is a conflict of evidence as to whether a confession is or is not voluntary, if the court decides that it is admissible, the question may be left to the jury, with the direction that they should reject the confession if, upon the whole evidence, they are satisfied it was not the voluntary act of the defendant. Commonwealth v. Preece, 140 Mass. 276, 5 N. E. 494; People v. Howes, 81 Mich. 396, 45 N. W. 961;

Thomas v. State, 84 Ga. 613, 10 S. E. 1016; Hardy v. United States, 3 App. D. C. 35." To the same effect is the decision of this court, speaking through Judge Hunt, in Gin Bok Sing v. U. S., 8 F.(2d) 976, 977, as follows: "The court, having decided the evidence was admissible, left it to the jury to say whether the admissions were the voluntary acts of the defendant, and directed that the jury reject the admissions if they were satisfied they were not voluntarily made. Such a practice is in harmony with the decision in Wilson v. United States, 162 U. S. 613, 16 S. Ct. 895, 40 L. Ed. 1090, Mangum v. U. S. (C. C. A.) 289 F. 213, and Petersen v. United States (C. C. A.) 297 F. 1002."

The appellant has made no attempt to point out in what respects the evidence introduced before the jury concerning the voluntary character of the confession justified the submission of that question to the jury. All the references to the transcript in appellant's brief are to the evidence taken during the absence of the jury. We have nevertheless examined the testimony before the jury and find nothing in the evidence presented to them which would justify or require the submission of the question of the competency of the evidence of confession to the jury.

**■** Appellant assigns as error the failure of the court to grant his motion for mistrial. The motion was based upon the contention that a question had been asked and an answer given so prejudicial to the defendant that, notwithstanding the ruling of the court striking out the answer and instructing the jury to wholly disregard it, the defendant could not thereafter have a fair trial. The court twice instructed the jury to entirely disregard the evidence thus adduced. The first instruction was given in response to the motion of the defendant, and the second instruction was given at the time of the denial of a motion for mistrial. Ordinarily the ruling of the court striking out the evidence and instructing the jury to disregard it would cure any error in the admission of the evidence. Metzler v. U. S. (C. C. A.) 64 F.(2d) 203; Remus v. U. S. (C. C. A.) 291 F. 501; U. S. v. Rosenstein (C. C. A.) 34 F.(2d) 630. There are, however, instances in which evidence is so prejudicial that even the instruction of the court to the jury to disregard the same may be considered insufficient to correct the error. Lockhart v. U. S. (C. C. A.) 35 F.(2d) 905; Looker v. U. S. (C. C. A.) 240 F. 932; Remus v. U. S., supra. With these propositions in mind we state the effect of the evidence rather than its language.

**■** The witness Jensen, who was present during the time the defendant's confession was made which was some time before 8 p. m., and who was one of the persons the defendant testified had intimidated him, testified that between 9:30 and 10 p. m., which was before the defendant's written confession in its final form was signed by the defendant, the defendant had requested the witness that he be taken out in order that he might have sexual relations with a colored woman. The district attorney asserts that this evidence was relevant to show the physical and mental condition of the appellant immediately after his confession, which had just been concluded prior to his later confessions. On the voir dire defendant had taken the stand and testified with relation to his physical and mental condition at the time he made the confession with a view of proving that the confession was not voluntary. He testified, as stated above, that he was in poor condition, was sickly and suffering from blood poisoning, was having trouble with his heart, and had made his confession because of fear of the officers. The district attorney contends that evidence of his familiarity with the officers at the jail, and his abnormal request, showed that his statements in regard to his fear and physical condition were untrue and tended to show that his confession was voluntary. The question and answer were anticipatory. We are inclined to hold that the evidence was admissible as indicating the defendant's state of mind, but the prompt action of the trial court in granting the defendant's motion to strike, and in instructing the jury to disregard the evidence, prevented any further development of the matter, and we place our decision upon the ground that the error of the district attorney in eliciting the answer, if any, was not prejudicial. His action is not assigned as misconduct, and evidently he was acting in good faith.

**■** The defendant proposed fourteen instructions to the jury, bearing upon the question of the rejection of the evidence of confessions in the event the jury determined that the confessions were involuntary. It is a sufficient answer to the exceptions to their refusal to repeat that there is not sufficient conflict in the evidence, as presented to the jury concerning whether or not the confession was voluntary, to justify submission of that question to the jury.

Judgment affirmed.