**LEE PONG TAI v. ACHESON,**
Secretary of State.
Civ. A. No. 10799.

United States District Court
E. D. Pennsylvania.
April 30, 1952.

504

Marvin M. Neuman, Philadelphia, Pa., for plaintiff.

Gerald A. Gleeson, U. S. Atty., Philadelphia, Pa., for defendant.

FOLLMER, District Judge.

The plaintiff, Lee Pong Tai, instituted this action under the provisions of Title I, Subchapter V, § 503, of the Nationality Code, 8 U.S.C.A. § 903, seeking a declaratory judgment declaring him to be a citizen of the United States. The case was tried to the Court and without a jury.

Plaintiff testified that he was born in San Francisco, California, July 6, 1902, the son of Lee Chong and Wong Shee; that the mother died in the San Francisco earthquake in 1906, and the father brought him to Philadelphia, Pennsylvania, the same year; that he has resided in Philadelphia continuously since that time except for a short visit to China in 1947; that the father returned to China in 1921 and is now deceased. Two elderly women testified that they were teachers in a Baptist Sunday School in Philadelphia and had been such since 1915, and that the plaintiff was an attendant at their School when in his teens. Another witness, a barber, testified that he first met the plaintiff about 1910, at which time he was a youngster not even in his teens.

In addition to the above, plaintiff introduced a photostatic copy of two affidavits, one made by himself and the other by one Louie Suey, both were dated December 7, 1925, and were taken before Howard M. Long, United States Commissioner, Eastern District of Pennsylvania. Plaintiff's affidavit stated that he lived at 925 Race Street, Philadelphia, and was a merchant; that he was born in San Francisco July 6, 1902, the son of Lee Chong and Wong Shee, who lived at 707 DuPont Street, San Francisco; that his mother, Wong Shee, died in the earthquake in 1906, and that same year his father brought him to Philadelphia; that his father returned to China in April 1921. Louie Suey's affidavit stated that he lived at 930 Race Street, Philadelphia; that he had lived in Philadelphia for the past sixteen or seventeen years; that he was sixty-five years of age and had been in the United States about forty-five years; that his labor certificate was issued in Sacramento, California, March 23, 1894, and carried No. 109774. The affidavit further stated that deponent knew Lee Chong and Wong Shee, the parents of Lee Tai, when they were living in San Francisco, and had known Lee Tai since he was born; that he, deponent, knew that Lee Tai was born in San Francisco; that the mother was killed in the earthquake of 1906, and that Lee Tai had lived in Philadelphia for eighteen years prior to the date of the affidavit, i. e., December 7, 1925.

Subsequent to the trial the plaintiff submitted an affidavit which defendant agreed might be admitted into evidence. In this affidavit plaintiff explained the existence of the Louie Suey affidavit as follows: that during the years 1924 and 1925 heated arguments were occurring and disputes arising between two rival Chinese-American organizations, namely the On Leong Tong and Hip Sing Tong; that plaintiff was not a member of either of the said organizations; that by reason of this rivalry all persons of Chinese ancestry regarded themselves as being in danger; that Louie Suey was an old friend of plaintiff's family and one of the very few Chinese living in Philadelphia who had personal knowledge of plaintiff and his family; that because of the unrest as aforesaid plaintiff sensed the need of some documentary evidence of his birth; that he knew of no method of creating a civil delayed

record of birth; that in Chinese communities of 1925 the Office of United States Commissioner was regarded as superior to that of any other court or agency; that he accordingly had the said Louie Suey execute the affidavit before a United States Commissioner; that Louie Suey died at Philadelphia June 7, 1943.

Defendant admitted that a passport was issued to plaintiff on September 30, 1946, on proof of citizenship which at that time was considered sufficient. Defendant did not contend that there was any fraud in connection with the issuance of the passport in 1946, nor make any charge of forgery or perjury. The defendant did indicate that the Court should take judicial knowledge of the fact that some years later it was discovered that passport frauds had been committed about the time here in question in which various officers of the Departments of State and Justice in Philadelphia were involved. Defendant does not charge plaintiff with any knowledge of or participation in the alleged frauds. Admitting that certain frauds may have been committed in connection with the issuance of passports, at or about the time of the issuance of the passport to this plaintiff, that, in and of itself, certainly is not sufficient without other identifying proof to stigmatize every passport issued out of the offending office at the time of the alleged frauds.[1] Nor is the Court justified in taking judicial notice of such alleged frauds in the instant action.[2] However, in the instant case it is fortunately unnecessary to base our determination upon the issuance of the passport. Had it been necessary, I feel I would have been bound by Urtetiqui v. D'Arcy, 9 Pet. 692, 34 U.S. 692, 698, 9 L. Ed. 276, which held, "Upon the general and abstract question, whether the passport, *per se*, was legal and competent evidence of the fact of citizenship, we are of opinion, that it was not."

Now, as to the affirmative side of the case. Plaintiff took the stand and testified to his own belief concerning his birth, hearsay, of course, but a type of hearsay which is permitted.[3] In addition thereto, plaintiff produced three witnesses, two of whom knew him as a Sunday School pupil when he was in his teens, and another who testified he knew the plaintiff when he was about eight years of age. Finally, plaintiff produced the affidavits of himself and Louie Suey dated December 7, 1925, and above referred to. The Louie Suey affidavit categorically claims personal knowledge of the affiant of the birth of plaintiff in San Francisco, together with detailed knowledge of the subsequent whereabouts of plaintiff and of the death of plaintiff's mother in the San Francisco earthquake. Defendant introduced no evidence. So the only thing before the Court tending to a contrary view is the defendant's unsupported statement in its answer that it "is advised that the plaintiff was born in Kwangtung Province, in China and to the best of defendant's knowledge, information and belief first came to the United States some time between the year 1921 and 1925."

In Lee Hin v. United States, supra, the Court, in a comparable situation, said [74 F.2d 173]: "In considering these cases the rule is well established that the evidence must be weighed in the light of the defendant's ability to produce evidence."

The effort of this plaintiff over twenty-six years ago to put in some sort of permanent form the personal knowledge of an old family friend relating to his family and his birth has a familiar echo to-day, and among our own citizens. Statutes providing for the official recording of birth certificates are of comparatively recent origin. It seems to be the accepted procedure now for one lacking an old family record and whose birth antedates the

1. Wong Kam Chong v. United States, 9 Cir., 111 F.2d 707; Leong Kwai Yin v. United States, 9 Cir., 31 F.2d 738; Fong Lum Kwai v. United States, 9 Cir., 49 F.2d 19; Lee Choy v. United States, 9 Cir., 49 F.2d 24.

2. Fong Lum Kwai v. United States, supra.

3. Lee Hin v. United States, 9 Cir., 74 F. 2d 172; United States v. Wong Gong, 9 Cir., 70 F.2d 107.

official record to secure the affidavit of an acquaintance older than himself and with knowledge of the event that the subject was actually born, where and when. As one approaches the Biblical span of three score years and ten that requirement may prove increasingly difficult to meet. While the affidavit does not quite reach the generally accepted age of thirty years to qualify it as an ancient document and thus admissible as an exception to the hearsay rule,[4] nevertheless, it was taken over twenty-six years ago under circumstances in which such evidence ought properly to have been admitted if the person had been living, and I feel that its admissiblity here is a matter which rests in the discretion of the Court.[5] I feel that it is competent evidence.

In Lau Hu Yuen v. United States, 9 Cir., 85 F.2d 327, 331, in referring to the function of immigration officials in deportation cases, the Court said: "Their obligation as enforcers of the immigration laws is as mandatory to establish citizenship, if it exist, as it is to deport the alien."

According to the undisputed testimony, this plaintiff has lived continuously as a law-abiding citizen in one community, Philadelphia, for over forty years. I feel that the plaintiff has met the burden of proof required of him and has established to my satisfaction that he is a citizen of the United States, having been born to Chinese parents at San Francisco, California, on July 6, 1902. In this connection it is well to call to mind the final statement of the court in Kwock Jan Fat v. White, 9 Cir., 253 U.S. 454, 464, 40 S.Ct. 566, 570, 64 L. Ed. 1010, "It is better that many Chinese immigrants should be improperly admitted than that one natural born citizen of the United States should be permanently excluded from his country."

An order in accordance with this Opinion may be submitted.

4. Wigmore on Evidence, Vol. VII, § 2138.

5. N. Y. City Bar Association Lectures on Legal Topics, pub. 1926, Vol. III, p. 99,

Lecture by Judge Learned Hand on "The Deficiencies of Trials to Reach the Heart of the Matter," quoted in Wigmore on Evidence, Vol. V, Note to § 1576.