**SCHECHTMAN v. FOSTER, Warden.**

No. 132, Docket 21177.

United States Court of Appeals
Second Circuit.

Feb. 4, 1949.

Henry Schechtman, of Auburn, pro se., for relator.

Miles F. McDonald, Dist. Atty., of Brooklyn, N. Y., and Aaron Nussbaum, of Brooklyn, N. Y., for respondent.

The relator filed a brief and reply brief pro se.

Aaron Nussbaum, as amicus for the State of New York.

Before L. HAND, Chief Judge, and SWAN and CHASE, Circuit Judges.

L. HAND, Chief Judge.

The relator appeals from an order of the District Court, which dismissed his petition for a writ of habeas corpus to release him from custody under a conviction for robbery, first degree, in the County Court of Kings County, New York, on October 17, 1938. The petition was filed on July 9, 1948, and was based upon a single ground: that the conviction had been obtained upon perjured testimony which the prosecution knew to be such. The facts as they appear in the petition and in a supporting affidavit of the relator were as follows. Schechtman was convicted as one of three men who attempted to rob the drugstore of one, Muller, in Brooklyn, on March 22, 1937. Two of these men, Grimaldi and Gubitosi, were arrested within an hour and were convicted on May 17, 1937; the third escaped. The only question at Schechtman's two trials—one in July, 1938, which ended in a disagreement, and the other in September of that year—was whether he was the third robber. The testimony identifying him as such was that of Muller, who swore that he saw him in the store with Grimaldi and Gubitosi, and of two policemen, who were cruising in the neighborhood in a patrol car, twenty minutes after the robbery, and who saw three men nearby whom they chased. Of these they succeeded in arresting Grimaldi and Gubitosi; but the third escaped, and him they professed at the trial to identify as Schechtman. Muller swore that he had run upstairs to fetch his revolver as soon as the robbers left; and that, when he came down, he chased three men. In August, 1946, Grimaldi was transferred to Auburn Prison, where Schechtman learned from him that upon Grimaldi's trial Muller had sworn that three men had entered his drug store; that one had left and that the other two had followed; that he, Muller, had then run upstairs, fetched his revolver, come down and chased two men until they had reached the car of a witness, named Montefusco, half a block from the store; and that Muller had then seen the two men run down an alley. Grimaldi also told Schechtman that Montefusco had sworn that he was entering his residence when two men—whom he identified as Grimaldi and Gubitosi—came up and tried to enter his car; that at that moment Muller had arrived and that he and Muller drove off the two men. Grimaldi also said that the two policemen had sworn that about twenty minutes after the robbery they had arrived at a place about three blocks away from the store and had chased and captured two men. Schechtman was not arrested for this crime

until January, 1938, when he was under arrest for another crime, and it was then that Muller identified him as the third robber. His argument is that this evidence, which must be taken as true—since the judge dismissed the petition without a hearing—shows that the prosecution knew that Muller and the policemen were perjuring themselves, when it put them on the stand to tell their divergent stories of three men instead of two; and that this conclusion is confirmed by its failure to call Montefusco who would have said that only two men tried to board his car.

Schechtman appealed from his conviction, which was affirmed by the Appellate Division without opinion; and the Court of Appeals denied leave to appeal. We will ignore numerous unsuccessful efforts, which he made in the state court before 1943, by habeas corpus, mandamus or certiorari, and begin with July 1, 1942, when Grimaldi furnished him with an affidavit that the two policemen had sworn upon his, Grimaldi's, trial that they had seen only two men. Based upon this, on July 14, 1943, Schechtman petitioned the County Court for a writ, coram nobis, on the ground that his conviction had been obtained upon perjured testimony in violation of his constitutional rights. This writ was denied on October 23, 1943, and Schechtman appealed; but since no appeal lay at that time, this was fruitless; and he did not apply for certiorari to the Supreme Court. On November 7, 1946, he filed a second petition for a writ, coram nobis—this time with the assistance of counsel—in which he set forth the divergence in the testimony of Muller, which by hypothesis he had not known in 1943, as well as that of the policemen, on which he had relied in the first petition. The County Judge denied this writ on December 23, 1946, without opinion, and he still could not appeal from such an order; but again he did not seek certiorari from the Supreme Court. In April, 1947, the statute was amended to allow an appeal from an order denying the writ, coram nobis, and Schechtman filed his third petition in which he added to what he had alleged in his two earlier petitions, the prosecution's failure to call Montefusco,

which he had not learned until November 15, 1946. Another judge denied this petition also without opinion; and Schechtman appealed to the Appellate Division and moved for leave to proceed in forma pauperis. Leave was denied without opinion in April, 1948, and he filed a petition in the Supreme Court for certiorari to that denial in May, 1948, which was denied on May 17th. In October the appeal from the order denying the third petition for the writ, coram nobis, was dismissed for failure to prosecute.

In 1943 when Schechtman filed his first petition he knew that the two policemen had told different stories; in 1946 when he filed his second petition he knew everything except Montefusco's testimony, and indeed he learned that before the petition was denied. We will, however, disregard the denials of the first and second petitions upon the assumption that, as he did not know all the facts when he filed them, he was entitled to have the evidence considered as a whole upon his third petition. If the judge who denied that petition did in fact consider the evidence as a whole, and if he decided that it was not, even prima facie, sufficient to make out a case of deliberate presentation by the prosecution of perjured testimony, Schechtman was accorded the full measure of his constitutional rights. It must be remembered that upon habeas corpus a federal court does not in any sense review the decision in the state courts. Here, for example, the District Court could not properly have issued the writ, no matter how erroneous the judge had thought the state judge's conclusion that the evidence did not make out a prima facie case of the deliberate use of perjured testimony. The writ was limited to the assertion of the relator's rights under the Fourteenth Amendment; and due process of law does not mean infallible process of law. If the state courts have honestly applied the pertinent doctrines to the best of their ability, they have accorded to an accused his constitutional rights. Therefore the relator made out a case in the District Court only in the event that the judge who denied the third petition did not understand that the deliberate use of perjured testimony would vacate the conviction; or in

the event that he thought that it was not his duty to consider the whole evidence without being foreclosed by the denials of the earlier petitions. We do not know what was the ground of the state judge's denial, because he gave no reasons; but, since he may have understood that the deliberate use of perjured testimony required the conviction to be vacated; and since he may have decided that the evidence did not prove that issue, the relator, who has the burden of proving that he was denied due process of law, failed to make out a case. This is a point of great practical importance in New York, owing to the common practice of the courts of that state to decide cases without opinion. In cases of this kind, this generally leaves open the possibility that the decision has not been based upon a denial of any constitutional right; and if we assume jurisdiction in such cases, we shall become unwittingly courts of review.

■ This is not, however, the full measure of the obstacles which stood in the path of habeas corpus in the District Court, because, although no right of appeal was necessary,[1] since there was one, it was necessary that Schechtman before resorting to a federal court should exhaust all his remedies in the state court, including the right of appeal which did exist in 1948,[2] Although he did invoke that right, he did not press it to a conclusion; so that, prima facie, he did not exhaust his remedies. His excuse is that the Appellate Division denied him leave to proceed in forma pauperis; but he must show that the denial was itself a denial of due process of law. This he has not done. We do not know why the Appellate Division denied leave. It may have been because they did not think that he had made an adequate showing of his poverty; it may have been because they themselves examined the evidence which he had presented to the trial court, and satisfied themselves that there was no reasonable chance of his success, be-

cause it did not make out a prima facie case of the deliberate use of perjured testimony. Only in case their denial was because they thought that the issue was foreclosed by the earlier proceedings, or that the deliberate use of perjured testimony did not require a reversal, could the denial deprive him of any constitutional right. The same ambiguity emerges in considering the denial of this petition as emerges in considering the denial of the petition for the writ in the County Court itself.

■ Moreover, we think that in no event can the relator escape the effect of the denial of certiorari by the Supreme Court. We do not forget that in House v. Mayo[3] the Court decided in a case of this kind that the denial of certiorari should not be considered as a ruling on the merits; but the language there used, 324 U.S. at page 48, 65 S.Ct. at page 521, 89 L.Ed. 739, is significant: "where a state court has considered and adjudicated the merits of a petitioner's contentions, and this Court has either reviewed or declined to review the state court's decision, a federal court will not ordinarily reëxamine upon writ of habeas corpus the questions thus adjudicated." That was said in a case in which it appeared that the decision of the state court had gone off on a point of practice; and, although in the case at bar it does not affirmatively appear that the "state court has considered and adjudicated the merits," it also does not appear that it has not. Exactly the same question was presented upon the petition for certiorari as was presented to the District Court upon habeas corpus: that is, whether it is enough for a convicted person to show that the state court may have refused to consider the constitutional question. Perhaps it is possible that the Supreme Court refused to review the decision because it thought that a record upon habeas corpus might be different; although it appears to us that this is extremely unlikely. At any rate, no different record has in fact been presented,

---

[1] McKane v. Durston, 153 U.S. 684, 687, 14 S.Ct. 913, 38 L.Ed. 867; District of Columbia v. Clawans, 300 U.S. 617, 627, 57 S.Ct. 660, 81 L.Ed. 843; Carter v. Illinois, 329 U.S. 173, 175, 67 S.Ct. 216, 91 L.Ed. 172.

[2] Ex parte Hawk, 321 U.S. 114, 64 S. Ct. 448, 88 L.Ed. 572.

[3] 324 U.S. 42, 65 S.Ct. 517, 89 L.Ed. 739.

and, unless we are altogether to disregard the action of the court of last resort in the very case itself, the denial ought to be conclusive.

Order affirmed.