**UNITED STATES of America, ex rel. Santo CAMINITO, Relator,**

v.

**Robert E. MURPHY, as Warden of Auburn Prison, State of New York, Respondent.**

**Civ. A. No. 5450.**

United States District Court
N. D. New York.

Jan. 11. 1955.

Kaufman & Edelbaum, New York City, for petitioner, Maurice Edelbaum, New York City, of counsel.

Edward S. Silver, Dist. Atty., Kings County, Brooklyn, New York, William I. Siegel, of counsel, Asst. Dist. Atty., Kings County, Brooklyn, N. Y., Nathaniel L. Goldstein, Atty. Gen., of the State of New York; Manuel T. Murcia, Asst.

Atty. Gen., of counsel, for the respondent.

FOLEY, District Judge.

The Relator, Santo Caminito, filed a petition for a writ of habeas corpus. At my suggestion, his able attorney adopted the procedure set forth in Section 2243, Title 28, U.S.C.A. to have an order served upon the Warden of Auburn Prison, the Attorney General of the State of New York, and the District Attorney of Kings County, to show cause why a writ should not be issued directing the production of the prisoner to inquire into his alleged unlawful detention. It is a good procedure and I have used it several times to avoid the personal appearance of a long-term prisoner with the risk to security when it may be shown that such production is unnecessary. Upon the return of the order to show cause, the Assistant District Attorney of Kings County, by convincing argument and affidavit, convinces me that under the circumstances present, the production of the relator and further hearing in the matter would be an abuse of judicial power and discretion. A complete record of the trial is before me, submitted by the attorney for the relator, and includes the briefs that were submitted to the Court of Appeals of the State of New York. I also have the further advantage of the detailed and clear petition for a writ of certiorari, outlining fully the questions involved, that was filed during the October 1954 term, in the Supreme Court of the United States. The completeness in presentation of the constitutional issue involved obviates the repetition of testimony that was given at the trial in 1942, and in my judgment the interests of justice would not be served by further hearing and oral testimony. Such position is established by Darr v. Burford, 339 U.S. 200, 215–216, 70 S.Ct. 587, 94 L.Ed. 761; Brown v. Allen, 344 U.S. 443, 463–465, 73 S.Ct. 397, 97 L.Ed. 469. To similar effect recently is U. S. ex rel. De Vita v. McCorkle, 3 Cir., 216 F.2d 743.

However, despite the apparent incongruity, and almost effrontery on the part of a single District Judge to review the careful determinations of the trial and appellate courts of New York, the duty to so act is settled. United States ex rel. Leyra v. Denno, 2 Cir., 208 F.2d 605, 606; Brown v. Allen, supra, 344 U.S. 458, 507, 508, 73 S.Ct. 397; Stein v. People of State of New York, 346 U.S. 156, 170, 180–182, 73 S.Ct. 1077, 97 L.Ed. 1522. In accordance with such uncomfortable duty, particularly as it entails a review of decisions of the Court of Appeals, long noted as one of the most competent, distinguished and conscientious courts in the nation, I have reviewed the record of the trial exhaustively and to the best of my ability. The question of coercion and extortion of involuntary confession by force or threat can only be answered by reviewing the circumstances surrounding the confession. Leyra v. Denno, 347 U.S. 556, 557, 74 S.Ct. 716.

Caminito was convicted in 1942 of murder in the first degree, in the County Court of Kings County, New York. The case was submitted to the jury only under the theory of felony murder. After a recommendation by the jury, pursuant to the law of New York, he was sentenced to life imprisonment. Co-defendants, Noia and Bonino were convicted with him, and received similar sentences. Noia did not appeal, but Caminito and Bonino appealed through the courts of New York. The Appellate Division, Second Department, affirmed unanimously with Presiding Judge Lazansky, pointing out error in the refusal of a request to charge, but stating that such error was overshadowed by the emphatic statements in the charge on the same subject matter. People v. Caminito, 265 App. Div. 960, 38 N.Y.S.2d 1019. The Court of Appeals unanimously affirmed without opinion under the power conferred upon it by Section 542 of the New York Code of Criminal Procedure in regard to technical errors or defects or exceptions that are unsubstantial as to the rights of the parties. People v. Bonino, 291 N.Y. 541, 50 N.E.2d 654.

In 1948 and 1954, motions in behalf of the relator for reargument were denied. People v. Caminito, 297 N.Y. 882, 79 N.E.2d 277; Id., 307 N.Y. 686, 120 N.E.2d 857. On October 14, 1954, a petition for certiorari was denied by the United States Supreme Court, 348 U.S. 839, 75 S.Ct. 46, with Justices Black and Douglas dissenting. The petition filed now states "the only issue presented on this application is whether, under the guarantees afforded to relator by the Fourteenth Amendment to the Constitution of the United States, relator was and is being deprived of his liberty without due process of law." The reading of the record will not allow me the drastic conclusion that the state procedures of New York, fairly and consistently established and used in regard to the issue of such confession, were conducted so differently, unreasonably and unfairly during the trial of the relator as to constitute violation or impairment of constitutional guarantees. The Fourteenth Amendment does not prevent jury trial of the (coercion) issue. Stein v. People of State of New York, supra, 346 U.S. at page 179, 73 S.Ct. at page 1090, 97 L.Ed. 1522. Decisive respect should be accorded the state decisions in the absence of the impeachment by conceded facts where the issue has been fairly tried and reviewed. Stein v. People of State of New York, 346 U.S. at page 182, 73 S.Ct. at page 1091; Brown v. Allen, supra; Lisenba v. People of State of California, 314 U.S. 219, 62 S.Ct. 280, 86 L.Ed. 166; Malinski v. People of State of New York, 324 U.S. 401, 404, 65 S.Ct. 781, 89 L.Ed. 1029.

The issue of involuntary confession under force and threat was clear cut as far as Caminito was concerned. He took the stand and under the guidance of an experienced and eminent defense attorney, narrated in detail his story of police persecution, brutality, false identification, intimidation, physical and mental, that he said compelled admission and confession. The detectives flatly contradicted these assertions and the ones mainly accused reiterated such denials in rebuttal. The questions of food and physical punishment presented by the testimony were essentially and completely factual and peculiarly fitted to the province of the jury. A cold record, as I try to keep in mind when I am forced to the task of appellate review, can give little indication of the demeanor of the witnesses, their attitude, their tone of voice, their hesitancy, their emotions, their frankness, which are of fundamental importance in the determination where the truth lies.

Much other testimony also affected this issue of physical punishment by the police: the failure to complain to the Assistant District Attorney who took the second statement, the pictures by the photographers immediately after the confessions were taken in the police station, the lack of complaint to the magistrate before whom arraignment was made, or to the lawyer who spoke to him at the arraignment, or to the court or prison personnel who interrogated him as to his physical condition. His attorney flatly stated that he did not claim there were any marks upon the person of Caminito. (fol. 1971). Caminito testified that he did not confess after extreme physical punishment or the staged and spurious identification, but only after a discussion with Noia. (fols. 1782–5, 1821–2). Important testimony was elicited on cross-examination of Caminito by the Assistant District Attorney to statements contained in the confession which Caminito said came from his own mind and were not instilled in his own mind by the police as part of the alleged fabrication under pressure. (fols. 1825–41; 1844, 1849, 1853–55).

I realize it is too easy to rationalize with hindsight, but at least all the factors created a debatable, factual proposition suitable for triers of the fact.

Of course, there are many factors that are disturbing and cause suspicion. The holding of the defendants incommunicado, the sleeping on a hard bench without pillow or blanket in a cell probably not overheated, the failure to arraign without unnecessary delay as provided by

law, the admittedly false identifications, the intensive questioning by relays of detectives,—this combination together with the fact that the relator had never been arrested or convicted, would cause hesitation and suspicion on my part. So would the fact that there is little, if any, independent evidence connecting the relator with the commission of the crime. However, the same feelings must have been in the minds of the jurors and they decided the issue in favor of the People after a complete, informative, detailed and conscientious charge. The charge gives every indication of an attitude of fairness and shows clearly an ordeal of preparation, capably performed, that is so recognizable by a fellow trial judge. The burden of the people to prove beyond a reasonable doubt that the confessions were made freely and without the influence of fear produced by threats, the consideration that should be given the failure to arraign without unnecessary delay, and the entire problem of extortion of the confessions were stressed in a substantial portion of the charge.

In my judgment, we do not have the unusual situation presented in Leyra v. Denno, 347 U.S. 556, 74 S.Ct. 716. The Court of Appeals of New York has not been hesitant but consistently forthright in its review and condemnation of third-degree methods of police. People v. Buffom, 214 N.Y. 53, 108 N.E. 184; People v. Trybus, 219 N.Y. 18, 113 N.E. 538; People v. Doran, 246 N.Y. 409, 159 N.E. 379; People v. Barbato, 254 N.Y. 170, 172 N.E. 458; People v. Mummiani, 258 N.Y. 394, 180 N.E. 94. In the light of those decisions, I accord its determination in this case great weight, despite the failure to write. The balance, so necessary to society, between the accused and the accuser must be maintained. Snyder v. Commonwealth of Massachusetts, 291 U.S. 97, 122, 54 S.Ct. 330, 78 L.Ed. 674. In my judgment, constitutional requirements have been met upon the trial and upon review.

The order to show cause is dismissed, the petition for writ of habeas corpus is denied, and it is so ordered.