**UNITED STATES ex rel. William WADE, Relator-Appellant,**

v.

**J. Vernal JACKSON, as Warden of Clinton Prison, State of New York, Relator-Appellee.**

Civ. No. 6192.
United States District Court
N. D. New York.
Sept. 26, 1956.

William Wade, petitioner pro se.

Jacob K. Javits, Atty. Gen. of New York, Raymond B. Madden, Asst. Atty. Gen., of counsel, Joseph F. Gagliardi, Dist. Atty., Westchester County, White Plains, N. Y., Warren J. Schneider, Asst. Dist. Atty., New York City, of counsel, for appellee.

FOLEY, District Judge.

This petition for a writ of habeas corpus presents the same troublesome problem that was before me in United States ex rel. Caminito v. Murphy, D.C., 127 F. Supp. 689, reversed 2 Cir., 222 F.2d 698, certiorari denied 350 U.S. 896, 76 S.Ct. 155. The discomfort expressed in my decision in that matter, insofar as this application again entails the review of decisions made by the Court of Appeals of New York, remains the same and my feeling of respect for and deference to the competence of that great court has not lessened. However, the duty to review is still present as previously recognized.

Terror filled the early morning hours and day of April 14, 1941, in the City of Ossining, New York. The security of the famed prison with the peculiar name, Sing Sing, had been violated by the attempted escape of three desperate inmates. The convicts had killed an unarmed guard inside the prison during the escape, and when outside the prison killed an Ossining policeman in the public street adjacent to the railroad station in a gun battle. During this episode Waters, one of the convicts, was either killed or committed suicide, and Riordan and McGale, the other two, were apprehended in the woods across the Hudson River a few hours later. Wade, the petitioner here, was arrested in the City of Ossining when he and one Kiernan were entering a taxicab during or shortly after these violent episodes related above.

Wade, the petitioner, and Riordan, McGale and Kiernan were indicted jointly for the murder of the prison guard, Hartye. As an imposing answer to the inordinate delay which surrounds most criminal prosecutions, the trial of the four commenced on May 26, 1941, and concluded on June 27, 1941. The four defendants were found guilty of felony murder. The petitioner and Kiernan received from the jury the grace of a recommendation of life imprisonment in accordance with New York law and the presiding judge, although not so bound, sentenced them to such life imprisonment. Riordan and McGale were sentenced to death. After direct statutory appeals to the Court of Appeals were decided adversely to them and the judgments of conviction affirmed, both were executed.

These convictions have run the gamut of ordinary appellate review, particularly so the judgment of conviction in respect to the petitioner Wade. By memorandum-decision the Riordan and McGale convictions were affirmed by the Court of Appeals, New York, without opinion. People v. Riordan, 288 N.Y. 544, 42 N.E.2d 12. Wade's conviction was affirmed unanimously with no opinion by the Appellate Division, Second Department, New York, in a memorandum-decision citing only the above previous decision of the Court of Appeals in 288 N.Y. 544, 42 N.E.2d 12. People v. Wade, 265 App.Div. 867, 38 N.Y.S.2d 369. Upon a permissive appeal to the Court of Appeals, Wade's conviction was unanimously affirmed without opinion. People v. Wade, 291 N.Y. 574, 50 N.E.2d 660. Reargument was denied in that court. People v. Wade, 292 N.Y. 577, 54 N.E.2d 693. A petition by Wade for a writ of certiorari was denied by the United States Supreme Court, Wade v. People of State of New York, 320 U.S. 789, 64 S.Ct. 200, 88 L.Ed. 475, and rehearing denied, 320 U.S. 815, 64 S.Ct. 426, 88 L.Ed. 492. This statement of judicial review would seem to put most problems at rest, but recent authority clearly establishes the right of the petitioner to revive his contentions of the distant past and thus necessitate a recanvass of the whole situation by this District Court. United States ex rel. Caminito v. Murphy, supra; Leyra v. Denno, 347 U.S. 556, 74 S.Ct. 716, 98 L.Ed. 948. My complaint to such applications is not and never will be that

they are time-consuming, because any judge worth his salt can always find the time to read and consider them no matter how crudely presented, and correct manifest injustice and obvious deprivation of important constitutional rights. There is always the fear that one individual, particularly the indigent, may be the victim of an unfair prosecution without the benefit of careful and competent appellate review of his case. But the fear diminishes, at least for me, when it is apparent that a full dress review has been given the matter by the Court of Appeals of New York, long distinguished in the judicature of this country. Although it does not appear in this record the custom in New York is for the Governor to hold clemency hearings where defendants are condemned to death. Thus, in all probability, the record in the Riordan-McGale appeal, which was used in the Wade appeal upon the application of his attorneys, was reviewed again in this most distressing and soul-searching task of the Governor and his counsel as the final authority for commutation.

■■ Upon the filing of the handwritten petition by Wade, I followed the same procedure as in the Caminito case with which no fault was found by the Court of Appeals, Second Circuit. An Order to Show Cause was directed to the Attorney General of New York and the District Attorney of Westchester County. Affidavits in opposition have been supplied by both, and the District Attorney has filed the same voluminous record that was reviewed by the Court of Appeals in 1942. He has also furnished copies of the printed briefs that were submitted to the Court of Appeals and the petition for certiorari and the brief in opposition filed in the United States Supreme Court. I shall make these papers part of this record because they marshal the facts and inferences therefrom, particularly in reference to extortion of confession from Wade by violence and threat, in clear, intelligent and vigorous fashion for the respective sides of the controversy. The Attorney General and the District Attorney argue earnestly that there has not

been a complete exhaustion of state remedies, but it would seem that the Caminito and Leyra authorities previously cited indicate that the matter is at a stage where federal intervention by habeas corpus is proper. The motion filed by Wade in 1955 for writ of error coram nobis in the County Court of Westchester County involves the contention by Wade that a witness was possibly restrained from testifying in his behalf. Such application did not present the issue of forced confession in violation of the Fourteenth Amendment. Accordingly, I shall base my decision upon the record furnished primarily because there is no indication that a hearing would bring forth anything more on the issue than was fully presented in the trial court in 1941. United States ex rel. Salemi v. Denno, 2 Cir., 235 F.2d 910. See also Cranor v. Gonzales, 9 Cir., 226 F.2d 83.

The record has been a long one to read but I have read it from cover to cover. It was not burdensome because it relates one of the most fascinating and intriguing stories in the annals of crime. It is reality that has every element of tense drama. It is a startling example of the skillful and ruthless scheming of the professional criminal against society and law enforcement officials. It gives warm assurance to know that such officials are just as skillful, courageous and competent in meeting such awesome threat.

Because it is the main and substantial contention of Wade that his confession was extorted by extreme violence and threat, I have concentrated on the testimony in the record in that respect as far as Wade is concerned. As stated previously, the salient facts for both sides on this question are best summarized and expressed in the briefs filed in the Court of Appeals. This same issue permeated the entire trial as far as all the defendants were concerned.

Wade was represented by experienced criminal counsel. The presentation of force, violence and threat to his person during his custody and interrogation could not have been more fully developed. The issue was met head-on by a most

able District Attorney with the utmost candor and competence. His interrogation of the four defendants at the barracks resulted in the question and answer confessions admitted at the trial. These confessions were extracted with clarity and detail at a time when great strain must have been present because of the lack of knowledge as to how many conspirators were involved and whether or not there was still a menace to the security of the prison and the community. As stated by Mr. Justice Jackson in Stein v. People of State of New York, 346 U.S. 156, 168, 73 S.Ct. 1077, 1084, 97 L.Ed. 1522, each of the confessions "could have been fabricated only by a person gifted with extraordinarily creative imagination."

I am not naive enough to think that the troopers held a tea party for the defendants during that early morning and day of interrogation at the Hawthorne barracks, nor would I be much convinced that Wade could have used the telephone to call his lawyer during this period of confinement prior to his arraignment. However, the gruesome story of abuse and violence told by Wade was denied completely by the principals involved. Food and drink were offered and the testimony is that Wade had a glass of milk. There was not any challenge by the prosecution that Wade did not have any sleep that night, but I do not suppose that many people did, including the police and troopers, during this period in the vicinity of Ossining. The delay in the arraignment of Wade is not denied at all, but some justification is present because two defendants had to be captured, four had to be questioned to fit the pieces together and insure public safety from other confederates. The bruises on the body of Wade became a dispute in the medical testimony and again, as in all factual disputes, inferences could be drawn either way. The explanation for the removal of the defendants to the barracks seems plausible under the circumstances.

█ In my judgment, the trial of these four defendants contained all the contradictions of evidence and inference that could be developed on this crucial issue. The trial judge was painstaking in all his efforts and allowed the most thorough presentation and cross-examination to the defense. The jurors gave many hours of deliberation and several times returned with questions to the court. The record demonstrates to me the permissible resolution in favor of the People of contradictions in evidence or conflicting inferences. Stein v. People of State of New York, 346 U.S. 156, 182, 73 S.Ct. 1077, 97 L.Ed. 1522. It is impossible for me to tip over this jury verdict and judgment of conviction that has been reviewed by five judges of the Appellate Division of New York, seven judges of the Court of Appeals of New York, and certiorari denied by unanimous vote of the United States Supreme Court when the matter was a current one. Further, despite the caution of Mr. Justice Frankfurter in his dissenting opinion in the Stein case, 346 U.S. at page 200, 73 S.Ct. at page 1100, that the determination (forced confession) must not be influenced by an irrelevant feeling of certitude that the accused is guilty, there is always better support in the human mind to decide conflicting inferences adverse to a defendant when evidence of guilt is quite probable and reasonable. The admissions of Wade that were extracted by the District Attorney during his voluntary appearance on the stand in the preliminary examination on the admissibility of the confession were most damaging to his cause. The explanation of his presence in Ossining at the exact planned time of the break in the presence of Kiernan who was deeply involved is incredible and has no support from any other evidence. I do not have the feeling of hesitation and suspicion that I had in the Caminito case. Circumstantial and corroborative evidence was strong against Wade.

█ The Order to Show Cause is dismissed and the petition for habeas corpus is denied. The papers shall be filed without the usual requirement for the prepayment of fees. Inasmuch as the problem presented is one close in principle to

the legal contentions made in the Caminito and Leyra cases, although not close in fact, in my judgment, I hereby grant a certificate of probable cause to enable the petitioner to review this decision in the Court of Appeals, Second Circuit, if he be so advised.

It is so ordered.