**UNITED STATES ex rel. William WADE, Relator-Petitioner,**

v.

**J. Vernal JACKSON, as Warden of Clinton Prison, State of New York, Respondent.**

Civ. No. 6687.

United States District Court N. D. New York.

July 15, 1957.

Henry C. Roemer, Jr., New York City, for relator-petitioner, Philip C. Potter, Jr., New York City, and Earl H. Gallup, Albany, N. Y., of counsel.

Louis J. Lefkowitz, Atty. Gen., for respondent, J. Bruce MacDonald and Raymond B. Madden, Asst. Attys. Gen., of counsel.

FOLEY, District Judge.

The petitioner Wade files a second petition for a writ of habeas corpus. The first writ applied for involved the substantial legal contention of coerced confession and it was denied by me by Memorandum-Decision and Order dated September 26, 1956, reported as United States ex rel. Wade v. Jackson, 144 F. Supp. 458. With such denial I granted a Certificate of Probable Cause for the stated reason that the contentions made were close in legal principle to settled law although, in my judgment, lacking the same factual merit upon which the previous rulings were based.

The appeal from this decision is now pending in the Court of Appeals, Second Circuit, and at the request of the Legal Aid Society, Mr. Henry C. Roemer, Jr., represents the petitioner Wade upon such appeal. He has also assumed the burden to represent Wade in this present application which raises two new points, and he has supplemented the original handwritten petition filed by Wade with supplemental affidavits. I shall allow such additional matter because it is never my practice to be narrow in procedure or insist upon legal niceties in matters of this kind. The work done by this attorney has been accomplished in splendid fashion, first investigation by himself and law partners expense I am sure out of his own pocket, and then together with the filing of affidavits, a comprehensive brief on this subject which becomes more difficult each day because of the encroaching federal supervision over State criminal convictions. Equally so, the challenge made by the petitioner and his attorney has been met by the usual, workmanlike job of the Assistants Attorney General of New York who have not yet become totally disheartened by these belated maneuvers. See Brown v. Allen, 344 U.S. 443, 534–537, 73 S.Ct. 397, 97 L.Ed. 469, Jackson concurring. I accept such affidavits detailed as to the State record of proceedings as I have in the past as a return and answer to the allegations of the petitioner.

At first blush it would seem there is merit to the position of the Attorney General that Wade has not exhausted his state remedies pursuant to 28 U.S.C.A. § 2254 in reference to his new claims. It is again obvious that the petitioner's request to appeal as a poor person from the denial of coram nobis by the County Court was not brushed off because of poverty by the New York Courts, but was opposed by the State authorities on the ground it had no merit and apparently denied for such reason by the Appellate Division, Second Department, and the appeal later dismissed. Such preclusion by poverty seemed to be settled in the Second Circuit as not good exhaustion of State process to entitle one to the federal writ. Schechtman v. Foster, 2

Cir., 172 F.2d 339; certiorari denied 339 U.S. 924, 70 S.Ct. 613, 94 L.Ed. 1346; United States ex rel. Rheim v. Foster, 2 Cir., 175 F.2d 772, certiorari denied 338 U.S. 857, 70 S.Ct. 97, 94 L.Ed. 525; United States ex rel. Kalan v. Martin, 2 Cir., 205 F.2d 514. The Second Circuit recently stated in United States ex rel. Jordan v. Martin, 2 Cir., 238 F.2d 623, it has not yet disowned the Kalan and Rheim cases, supra. However, there is indication in United States ex rel. Priestley v. Fay, 2 Cir., decided May 23, 1957, that the Second Circuit may not be as rigid as in the past as far as the exhaustion of State remedies is concerned. However, I have many times taken these situations on the merits when not in too great conflict with orderly procedures, because usually it only postpones the inevitable to shunt them back to State remedies. Also, no matter how much we claim to the contrary, I cannot escape the feeling that I am sitting as a court of review in most instances, and that there has really been no end to the hierarchy of appeals. See United States ex rel. Steele v. Jackson, 2 Cir., 171 F.2d 432, 433; Brown v. Allen (Jackson concurring) 344 U.S. 443, 540, 73 S.Ct. 397, 97 L.Ed. 469. Therefore, because there is sufficient before me, most important a detailed state record of the 1941 trial, I go to the merits of the application in the form presented.

The major issue of the two presented is the claim by Wade that at the trial back in 1941 the testimony of one Dennis Fitzgerald was suppressed by the prosecution through the intimidating efforts of the State troopers of New York. That such testimony by Fitzgerald that he was drinking in Corcoran's Bar and Grill in New York City during certain hours when a car was stolen would have been favorable to the petitioner so as to establish an alibi in relation to his involvement in such theft and also in some manner support the claim of coerced confession. In the latter respect, I suppose the argument being if Fitzgerald were beaten to change his previous statement, then Wade must have been beaten to make his statement of confession.

The glaring weakness in the application is that there is not one word of support from Fitzgerald in any form that truthful, honest testimony on his part was kept from the defense by unfair practices of the prosecution. All we have are the impressions, opinions, inferences and conclusions of the earnest attorneys who interviewed him in a vain attempt to gain tangible support for the allegations of the petition. Even these deductions drawn solely in favor of their new client contain doubt as to the truth of the statements of Fitzgerald, whether made to either the defense attorney or the prosecution. This wilderness of speculation and conjecture affords not a single, concrete fact to warrant the grant of the federal writ of habeas corpus.

Practicality and reality must be given some consideration. The only reference to the presence of Wade and Fitzgerald with others in the bar and grill at the time the car was stolen on the night of the jail break was developed solely on cross and recross examination by the District Attorney. (R–1069–71, 1157–8). How naive can we get when we give serious thought to the suppression of testimony when a reading of the record shows that an able, experienced and shrewd criminal attorney did not even attempt to develop such testimony as part of his direct case? A reading of Kelly's testimony (pages 2073–2118) gives the reason for this attitude on the part of the Attorney Lowenberg because the grave insinuation was present of the concoction of an alibi and the possibility of subornation of perjury. One striking example is the unresponsive and volunteer answer of Kelly to Lowenberg's cross-examination: "A. Give me a chance. Bring Fitzgerald here * * *", (R. 2102), which was abruptly cut off by Lowenberg. It is contrary to all reason to assume that after this turn in the trial Lowenberg would have risked Fitzgerald as a witness even if he were available to him to the point where he

was sitting alongside him at the counsel table. It ridicules common sense to assume that this experienced trial lawyer would allow a material witness to be suppressed whom he wanted without making some comment in the record about such circumstance. The quality and impact of any testimony by Fitzgerald will never be known because it was never given, but it seems important to evaluate it even if it were favorable to the petitioner, as subject to inherent weaknesses of friendship and close time elements relevant only to a collateral matter linking the petitioner to the crime charged. The feeling of Lowenberg that such testimony might have been important is the usual 20/20 hindsight vision of an attorney when he is unsuccessful in defense.

I have given serious thought to the urgent request of the present attorney for the petitioner to grant a hearing and subpoena Fitzgerald, or at least order his deposition taken. However, I do not think that the state of the law requires such compulsion as the application now stands, nor would such compulsion lie in the interests of justice or be fair to the Courts of New York. Brown v. Allen, supra, 344 U.S. at pages 463–465, 502–505, 73 S.Ct. at pages 410–411, 443–445. As County Judge Coyle of Westchester County wrote: "* * * There is no fact cited which affects the validity of the judgment of conviction and sentence of this Court. Petitioner has raised no issue which entitles him to a hearing. * * *". (Ex. B, affidavit of Attorney General). The situation is still the same, and I am not inclined to make this court one of investigation as well as one of review unless higher authority directs me. See United States v. Johnson, 2 Cir., 238 F.2d 565, 567–573, reversed 352 U.S. 565, 77 S.Ct. 550, 1 L.Ed.2d 593.

Fitzgerald also has the right to be let alone and stay in the oblivion where he apparently wants to remain. Olmstead v. U. S., 277 U.S. 438, 478, 48 S.Ct. 564, 72 L.Ed. 944; On Lee v. U. S., 343 U.S. 747, 764, 72 S.Ct. 967, 96 L.Ed. 1270.

His present attitude as indicated by the affidavits submitted would only lead up a blind alley with endless search for gossamer possibilities that always may be speculated upon as an aftermath of tense murder trials. Long ago great jurists cautioned that the federal writ should be bounded with definiteness and factual basis. Ashe v. U. S., ex rel. Valotta, 1926, 270 U.S. 424, 46 S.Ct. 333, 70 L.Ed. 662, Justice Holmes; Snyder v. Commonwealth of Massachusetts, 1934, 291 U.S. 97, 122, 54 S.Ct. 330, 78 L.Ed. 674, Justice Cardozo; and recently a staunch supporter to retain the federal writ in its present usage, Mr. Justice Douglas, dissenting, commented: "I would guard the ancient writ jealously, using it only to prevent a gross miscarriage of justice." Cheesman v. Teets, 77 S.Ct. 1127.

█ The cases cited by the attorney for the petitioner bear out the general principle that suppression of vital evidence may be a denial of due process, but all have good factual basis for the application of this known standard of fairness. The extreme of the situation in United States ex rel. Thompson v. Dye, 3 Cir., 221 F.2d 763, is pointed out by the concurring opinions emphasizing there were special circumstances existing showing fundamental unfairness and that no unduly broad implications be read into the decision. In Pyle v. State of Kansas, 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214, there was much factual support to go on.

The issue of the bloodstained clothing was raised in the briefs in the State courts long ago and it must be assumed as passed upon, and I am willing to accept such State decision. Brown v. Allen, supra, 344 U.S. 463–465, 73 S.Ct. 410–411; United States ex rel. Salemi v. Denno, 2 Cir., 235 F.2d 910; United States ex rel. Lowery v. Murphy, 2 Cir., 245 F.2d 751. Again we will never know whether or not the defense attorney, in the rightful exercise of his trial strategy, did not feel he had emphasized the point enough and might not make better impression by leaving well enough alone.

For the reasons stated, the application is denied and dismissed in its entirety. I hereby grant a Certificate of Probable Cause solely in the interests of avoiding piecemeal appeals and in order that appeal herefrom may be joined with appeal on the coerced confession issue pending in the Court of Appeals, Second Circuit. The papers herein shall be filed by the Clerk of this Court without the usual requirement for the prepayment of fees, and it is

So ordered.