**UNITED STATES of America ex rel. Edward J. KIERNAN, Relator,**

v.

**J. Edwin LA VALLEE, Warden of Clinton Prison, Dannemora, Clinton County, New York, Respondent.**

Civ. A. No. 8659.

United States District Court
N. D. New York.

Jan. 24, 1961.

thereof, determined, in the light of all the facts and circumstances in each case, shall be allocated to each."

C. Joseph Hallinan, Jr., New York City, for relator.

Louis J. Lefkowitz, Atty. Gen. of New York (Raymond B. Madden, Asst. Atty. Gen., of counsel) and Joseph F. Gagliardi, Dist. Atty., Westchester County, White Plains, N. Y. (Douglas L. McGuire, Asst. Dist. Atty., White Plains, N. Y., of counsel), for respondents.

JAMES T. FOLEY, District Judge.

This federal habeas corpus proceeding involves one of the most serious problems that, in my judgment, can confront a United States District Judge, sitting and deciding alone as is his usual function. It necessitates again the thrust of federal examination by the single judge into a murder first degree conviction rendered in New York many years ago and very recently affirmed unanimously by the highest court of that state, the Court of Appeals. The appraisal on my part of serious impact and disturbance to the delicate balance of federal-state relations by this procedure is not the theoretical one discussed and foreseen by many eminent judges and writers, or one of first impression. It has evolved as a result of a long, practical experience and observation of a substantial number of these matters from their inception and processing in this District Court to the issuance of the writ in several instances with a front-line view of the effect upon the law enforcement personnel of New York and the legal officers who prosecute the crimes and in dedication to society attempt to uphold the conviction. Each one assumes an important role because of the intense public and legal interest generated by federal judicial writings and decisions when the charge is murder, the gravest transgression of the natural and moral law as well as the statutory.

Habeas corpus applications by state prisoners of New York are now numerous and routine in this District and an increasing burden. Of course, the great bulk do not involve murder convictions but there is evident to me, whether rightly or wrongly on their part, determined feeling by the state prisoners in their correspondence and petitions that we are now considered a court of review and appeal empowered to examine into and correct every possible imperfection that might exist in the state criminal procedures of New York. Their attitude reminds me of the humor of the immortal Mr. Dooley that an appeal is where you ask one Court to show its contempt for another. It is immaterial to the state prisoners whether we show our contempt for the lowest, intermediate or highest courts of New York as long as we

maintain good discipline and surveillance of them that might some day favor their cause.

I want to make clear that I favor the Great Writ in its present form and am not sure that it needs the proposed legislative changes that mainly seek to avoid the unseemliness of the single judge overturning the highest Court of a State in a criminal matter. (H.R. 3216; House Report No. 548). In my judgment, the writ is the ultimate safeguard that should be preserved and effectively used as it has been throughout our history to remedy manifest injustice. It shall weaken and become dissolute if it is used carelessly, indiscriminately and arrogantly, as another adjunct to appellate procedures to pry into and meddle with the minutiae of state criminal processes. It should never be used as a fault-finding device that might be contrary to the settled principle enumerated by the Supreme Court that the States must have the widest latitude in their administration of their own system of criminal justice. Hoag v. New Jersey, 356 U.S. 464, 468, 78 S.Ct. 829, 2 L.Ed. 2d 913.

I heed with great respect the statement of the most eminent judge of this Circuit, Learned Hand, that it must be remembered that upon habeas corpus a federal court does not in any sense review the decision in the state court, and due process of law does not mean infallible process of law. Schechtman v. Foster, 2 Cir., 172 F.2d 339, 341. The Court of Appeals, Second Circuit, cautioned some years ago that the possibility that any court in the country may be mistaken is part of the burden of the administration of justice and that there must be an end to the hierarchy of appeals. United States ex rel. Steele v. Jackson, 2 Cir., 171 F.2d 432, 433. Justice Cardozo in his poetic language pictured the problem as one in which the balance must be kept true between the accused and the accuser. Snyder v. Massachusetts, 291 U.S. 97, 122, 54 S. Ct. 330, 78 L.Ed. 674. Justice Douglas, whom I admire and respect as always in the forefront to protect individual right and freedom, still circumscribes carefully the use of the ancient writ, warning it should be guarded jealously, using it only to prevent gross miscarriage of justice. Chessman v. Teets, 354 U.S. 156, 173, 77 S.Ct. 1127, 1 L.Ed.2d 1253.

█ The question now presented is different from the run-of-the-mill habeas corpus applications because it raises the challenge of the use of a coerced confession in a capital case. The law is well settled by a wealth of writings of our highest authority that independent federal examination must be made as to the merit of such claim. Spano v. New York, 1959, 360 U.S. 315, 321, 79 S.Ct. 1202, 1206, 3 L.Ed.2d 1265 note 2—Chief Justice Warren lists the many Supreme Court cases; United States ex rel. Rogers v. Richmond, 2 Cir., 271 F.2d 364, 378,—Chief Judge Clark dissenting lists the considerable body of similar cases passed upon recently by the Court of Appeals, Second Circuit. I have had a substantial number of important cases before me in recent years involving murder first degree convictions of New York and have written, as we do in every habeas corpus application in this District whether it has merit or not, and some of the reported cases beginning in 1955 are: United States ex rel. Caminito v. Murphy, D.C., 127 F.Supp. 689; 2 Cir., 222 F.2d 698, certiorari denied 350 U.S. 896, 76 S.Ct. 155, 100 L.Ed. 788; U. S. ex rel. Wade v. Jackson, D.C., 144 F.Supp. 458; 2 Cir., 256 F.2d 7, certiorari denied 357 U.S. 908, 78 S.Ct. 1152, 2 L.Ed.2d 1158; United States ex rel. Williams v. Lavalle, D.C., 170 F. Supp. 582; 2 Cir., 276 F.2d 645; United States ex rel. Wolfe v. LaVallee, 179 F. Supp. 939; 2 Cir., 277 F.2d 926; United States ex rel. Murdaugh v. Murphy, D.C., 183 F.Supp. 440, appeal dismissed 2 Cir., 10/3/60; United States ex rel. Martin v. Murphy, D.C., 187 F.Supp. 395, remanded 2 Cir., 12/14/60. There are more reported and unreported, several under process now as to merit, and, of course, Chief Judge Brennan of this District has had his share, a recent noted

one being U. S. ex rel. Corbo v. LaVallee, 2 Cir., 270 F.2d 513; certiorari denied 361 U.S. 950, 80 S.Ct. 403, 4 L.Ed.2d 382. The number must be considered substantial in my opinion because each questions a decision of the state's highest court of New York in a capital case and under our present procedures allows their appellate judgment to be set aside by a single federal judge. The case that seems in my judgment to have stimulated the increasing attack upon New York procedures in relation to the admission of confessions was Leyra v. Denno, 1954, 347 U.S. 556, 74 S.Ct. 716, 98 L.Ed. 948. This unusual case is the prime example of one going the full circle as the citations show. People of State of New York v. Leyra, 302 N.Y. 353, 98 N.E.2d 553; 304 N.Y. 468, 108 N.E.2d 673, certiorari denied 345 U.S. 918, 73 S.Ct. 730, 97 L.Ed. 1351; rehearing denied 345 U.S. 946, 73 S.Ct. 835, 97 L.Ed. 1371; D.C., 113 F.Supp. 556; 2 Cir., 208 F.2d 605; 347 U.S. 556, 74 S.Ct. 716. In this case on the second time around, Justice Minton dissenting (347 U.S. at page 589, 74 S.Ct. at page 733), stated New York must be mystified in its efforts to enforce its law against homicide to have it said in effect it may not submit a disputed question of fact to a jury. The Court of Appeals, Second Circuit, seems to be doubtful of the so-called "New York" rule of confessions, and leaves open federal acceptance in this Circuit of its validity. United States ex rel. Rogers v. Richmond, 2 Cir., 252 F.2d 807, 810. Then came the Caminito decision, which was written by the late Judge Frank whose learning and progressive thinking always stimulated discussion, and which received elaborate attention in the metropolitan newspapers and national magazines. I had no quarrel with the finding as to the involuntariness of the confession, but the treatise after review of psychological torture and bestiality by human beings over the centuries concluded that the test of the moral quality of a civilization is its treatment of the weak and powerless. I am sure the weak and powerless want

fair, balanced treatment that insures also protection and security from professional, hardened and vicious criminals. New York has a good record for fair criminal procedures and competent trial and appellate courts with concern for individual rights regardless of creed or national origin.

It is not my province, right or function as a District Judge to establish guide lines, policy or approach to these matters, but I feel it my duty to report on the impact of the system as it now exists. I report again an increase in resentment and misunderstanding by the public, law enforcement officers, bar and bench of New York to lower federal court rulings in these tense, impassioned murder cases that in effect override the considered decisions of the Court of Appeals of New York. The danger and delicacy of review by a single District Judge has long been a matter of concern in the United States Supreme Court. Darr v. Burford, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761. In this opinion, page 212, note 34, 70 S.Ct. page 594, reference is made to the article and report of the late Chief Judge Parker, Chairman, Judicial Conference Committee which drafted the new Habeas Corpus Act in 1948, 8 F.R.D. 171, pointing out that reviews should be had as far as possible by the Supreme Court of the states' highest courts. The Supreme Court emphasized therein that orderly federal procedure, under our dual system of government, demands that the states' highest courts should ordinarily be subject to reversal only by that Court. Chief Judge Clark of the Court of Appeals, Second Circuit, in Caminito, supra, 222 F.2d at page 706, concurring in the result, recognized the threat to dignified or effective law enforcement and expressed his judgment that the sphere of federal superintendence should not extend to state police activities; there the state courts should have the burden, subject only to certiorari by the Supreme Court in the few cases where needed.

That there is anxiety in the federal system not alone on my part when the

single judge acts is recognized again by Judge Clark in his dissent in U. S. ex rel. Rogers v. Richmond, 2 Cir., 271 F.2d 364, 375, certiorari granted 361 U.S. 959, 80 S.Ct. 605, 4 L.Ed.2d 541. In this case, Judge Leonard Moore, in his opinion for the majority of the court (271 F. 2d at page 368), evidences the sense of frustration and cynicism being engendered by this circumlocution of review of state criminal proceedings with the issue of coerced confession apparently never at rest. It is important also to note that the Court of Appeals, New York, has always willingly followed the principles established by the Supreme Court. It has gone beyond the solicitude for deprivation of appellate review by reason of indigence laid down in Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891. See People v. Kalan, 1 N.Y.2d 922, 154 N.Y.S.2d 980, 136 N.E.2d 920; 2 N.Y.2d 278, 159 N.Y.S.2d 480, 140 N.E.2d 357; People v. Pride, 3 N.Y.2d 545, 170 N.Y.S.2d 321, 147 N.E.2d 719; People v. Pitts, 6 N.Y.2d 288, 189 N.Y.S. 2d 650, 160 N.E.2d 523. It has also gone into extended discussion and dispute as to the direct reversal in Spano v. New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L. Ed.2d 1265, with obvious attempt of honest effort to discern properly and apply the law therein to a new situation. People v. Di Biasi, 1960, 7 N.Y.2d 544, 200 N.Y.S.2d 21, 166 N.E.2d 825. The same cannot be said of its acceptance of lower federal court reversals. People v. Bonino, 1 N.Y.2d 752, 152 N.Y.S.2d 298, 135 N.E.2d 51; People v. Caminito, 3 N.Y.2d 596, 170 N.Y.S.2d 799, 148 N.E. 2d 139; see also United States ex rel. Noia v. Fay, D.C., 183 F.Supp. 222. The unanimous refusal to follow the findings and decision of the Wade case by the Court of Appeals, Second Circuit, in the instant situation here should give further concern. People v. Kiernan, 6 N.Y. 2d 274, 189 N.Y.S.2d 215, 160 N.E.2d 503. My summary and conclusion is that the potential conflict is here and this danger of conflict discussed so long seems clear and present. Judicial action or legislative correction seems necessary.

My nature is not one to view with alarm, nor do I have any desire to avoid an unpleasant burden because of fear to decide an unpopular cause.

The relator Kiernan is a co-defendant of William Wade who was convicted with him in June, 1941, of murder first degree for their participation in the sensational Sing Sing jail break. The details of the violent episode, the participants, the trial and the disputed and undisputed facts concerning the issue of coerced confession should be sufficiently set forth in my opinion (United States ex rel. Wade v. Jackson, D.C., 144 F. Supp. 458), and the detailed one of present Chief Judge Lumbard (2 Cir., 256 F.2d 7). The present Chief Judge differed with the inferences and conclusions I drew from the facts, whether they be characterized disputed or undisputed, although in reading the records of these murder cases, in my judgment, somewhere along the line everything is disputed to some extent, directly or indirectly. It was my firm, general impression that the defendants had a fair trial before an impartial judge and jury, represented by experienced lawyers under the accepted procedures and law of New York in the presentation of the usual factual clash as to the voluntariness or involuntariness of the confessions. New York Code Crim.Proc. § 395. In accordance with the direction of the Circuit Court after certiorari was denied, I sustained the writ of habeas corpus and Wade appeared before me here in Albany for his transfer from the state prison officials to the county prison officials. The dismay and bewilderment of the state and county law enforcement officers and the legal representatives of the People at my intrusion were apparent. To complete the picture for the evaluation of possible and growing friction between the state and federal courts in a matter of this kind, according to reliable newspaper reports, the present Westchester County Judge dismissed the indictment against Wade "regretfully and with a heavy heart". Wade is free.

It may seem anomalous for me in effect to retract my previous determination, but it is not difficult for the reason that Judge Lumbard, writing for the authority which I follow freely when the way is marked clearly, has set a definite guideline, in fact almost a blueprint, of the undisputed facts that must be weighed in favor of Kiernan to the same extent as they were for Wade. I further add there is no discomfort or difficulty on my part to digest and follow the analysis of Judge Lumbard because it is penetrating, detailed, persuasive, and has sound support in the record. In the fact-finding mission there is no formula to test with absolute certainty falsity or truth, and I have long grown accustomed not only to juries disagreeing on facts but even judges of the highest authority who split 5–4 in measurement of the facts involved in situations of this kind. Thomas v. Arizona, 356 U.S. 390, 78 S. Ct. 885, 2 L.Ed.2d 863; Crooker v. California, 357 U.S. 433, 78 S.Ct. 1287, 2 L.Ed.2d 1448. Good lawyers and good judges, all men of good will, integrity and trained perception, can give plausible argument either way and the reason is that the diagnosis is human and not divine. There are certain areas of disagreement I still respectfully maintain, although they are not crucial to the determination of the undisputed facts present in the record that tend to show coercion. I would never believe that Kiernan and Wade, who were not inmates of Sing Sing, were in Ossining by coincidence at the exact time of this desperate jail break which resulted in the death at the scene of three human beings. In my previous opinion in the Wade case I referred to Kiernan as deeply involved, and a re-reading of the record convinces me he was the main conspirator on the outside. It is also difficult for me to reason that on this nightmarish night and day in Ossining the District Attorney, his officers and the State Troopers, no matter how numerous, would not need many days of investigation and interrogation to be content with the number of persons involved. The safety of a large community was at stake as well as the security of a large prison, and although hindsight improves vision, in my judgment it was a trying and confused situation with little time for legal meditation. Any import in the Stein case, Stein v. People of State of N. Y., 346 U.S. 156, 73 S.Ct. 1077, 97 L.Ed. 1522, that independent evidence might support the conviction outside the coercion claim is put to rest in Payne v. Arkansas, 356 U.S. 560, 568, 78 S.Ct. 844, 2 L.Ed.2d 975; Spano v. New York, 360 U.S. 315, 323, 79 S.Ct. 1202, 3 L.Ed.2d 1265.

The relator Kiernan did not pursue his appeal as did Wade after unanimous affirmance by the Appellate Division, Second Department, New York. People v. Kiernan, 1942, 265 App.Div. 866, 38 N.Y.S.2d 370. But he did file timely notice of appeal in the Court of Appeals, New York, and it was entertained, heard and decided by this distinguished Court in 1959. People v. Kiernan, 6 N.Y.2d 274, 189 N.Y.S.2d 215, 160 N.E.2d 503. The Court of Appeals unanimously affirmed the conviction, and upon petition for writ of certiorari to the United States Supreme Court it was denied with the significant addition to the routine denial: "without prejudice to an application for a writ of habeas corpus in the appropriate United States District Court." Kiernan v. New York, 363 U.S. 824, 80 S.Ct. 1260, 4 L.Ed.2d 1520. C. Joseph Hallinan, Jr. who appeared for Kiernan in the Court of Appeals, New York, requested that he be assigned and the relator-petitioner be allowed to proceed in forma pauperis, and by memorandum-decision dated June 27, 1960, I allowed both requests. The writ was issued, the matter set down for hearing, and the relator brought to Albany in custody of State prison guards. After persistent statements and requests for the record on my part, Attorney Hallinan, with the relator acquiescing in open court, stated that no evidence would be offered on their side, that Kiernan would not offer himself as a witness, and the relator would stand upon the trial record

made in the State courts of New York years ago.

The Attorney General and the District Attorney resist this federal application upon the same grounds that were outlined by Judge Froessel in his opinion for a unanimous court in the affirmance of the original judgment of conviction, now more than nineteen years old. People v. Kiernan, supra, 6 N.Y.2d at pages 275–276, 189 N.Y.S.2d at page 216, 160 N.E.2d at page 504. The attitude and important reasons for the holding is stated thus:

"Although the United States Court of Appeals, Second Circuit, has held that the writ of habeas corpus must issue to his codefendant Wade, our reading of the record leads us to conclude that the statement given by the defendant Kiernan was not, as a matter of law, the product of coercion. When the so-called 'undisputed facts' and 'inadequate explanations', from which the Federal court concluded that Wade's statements were coerced, are examined and analyzed in the light of all the evidence in the record affecting Kiernan, they are by no means so conclusive as to mandate a trial court to reject Kiernan's confession without submission to a jury. Kiernan, unlike Wade, did not take the stand and testify as to the manner in which he was treated between the time of his arrest and the time his statement was taken (cf. People v. Bonino, 1 N.Y.2d 752, 152 N.Y.S.2d 298, 135 N.E.2d 51). We do not regard the evidence as to the circumstances surrounding his confession sufficient to hold that his confession was involuntary *as a matter of law* and the use thereof as evidence a denial of due process under the Fourteenth Amendment to the Constitution of the United States."

█ █ It is my purpose now to indicate the federal reasoning that must impel me away from this considered judgment under the circumstances here. Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469, in my judgment, is a most helpful and detailed guide for the federal approach to these delicate and grave problems. The failure of a petitioner (relator) to take the stand at the state trial is not fatal to his cause in the federal habeas corpus proceeding if the facts are sufficiently developed in the record by his counsel as to the challenge of coercion or threat. A United States Court appraises the alleged abuses by the facts as shown at the hearing or *admitted on the record*. (Italics mine, 344 U.S. at page 475, 73 S.Ct. at page 416.) State adjudication of questions of law cannot, under the habeas corpus statute, be accepted as binding. It is precisely these questions that the federal judge is commanded to decide. 344 U.S. at page 506, 73 S.Ct. at page 445. The District Judge must exercise his own judgment on the blend of facts and their legal values. The question whether primary facts underlying a confession prove that the confession was coerced or voluntary cannot rest on the State decision. 344 U.S. at page 507, 73 S.Ct. at page 446.

█ The totality of circumstances must be considered. Fikes v. Alabama, 352 U.S. 191, 197, 77 S.Ct. 281, 1 L.Ed. 2d 246. Where the claim is that the prisoner's confession is the product of coercion the federal court must make independent examination of the record to determine the merit of the claim and the performance of this duty cannot be foreclosed by the finding of a Court, or the verdict of a jury, or both. Payne v. Arkansas, 356 U.S. 560, 562, 78 S.Ct. 844, 2 L.Ed.2d 975, Leyra did not take the stand in his second trial. United States ex rel. Leyra v. Denno, 2 Cir., 208 F.2d 605, 608, reversed 347 U.S. 556, 74 S.Ct. 716, 98 L.Ed. 948. In Fikes v. Alabama, 352 U.S. 191, 196, 77 S.Ct. 281, and Spano v. New York, 360 U.S. 315, 79 S.Ct. 1202, the petitioner did not testify at the state trial. Recently, the Court of Appeals, Second Circuit, on December 14, 1960, remanded to me for

determination whether relator was timely notified of his right to counsel after arraignment when the petitioner did not testify at the State trial. United States ex rel. Martin v. Murphy, supra. It seems clear that the failure of the defendant to testify is not fatal from the federal viewpoint, because the principle is clear in many cases that the federal search is for undisputed and uncontroverted facts in any part of the record that might bear upon the issue and allow a conclusion of coercion. The area and boundary of this type examination is apparently impossible to delineate in any other manner except to caution we must remain away from the disputed fact area. Thomas v. Arizona, 356 U.S. 390, 402–403, 78 S.Ct. 885, 2 L.Ed.2d 863.

In his opinion in the Wade case, Judge Lumbard set forth (256 F.2d at pages 11–14) from the record thirteen numbered points as undisputed facts and inadequate explanations from which the conclusion was drawn that Wade's confession was involuntary. Mr. Hallinan in the petition for the writ in this Court relates by reference to the record with elaboration each of the points as they would refer to Kiernan, and demonstrates to my satisfaction that each fits the cause of Kiernan like a glove except 10 and 11, which do not materially affect the sufficiency of substantial factors necessary to find coercion and involuntariness. In number 12 Judge Lumbard specifically finds as admitted fact with inadequate explanation the physical marks on Kiernan the day after arrest testified to by Dr. Davis: "ecchymotic areas on the left eye and on Kiernan's trunk. These were dark blue discolorations. One area in the pit of the stomach was about the size of a baseball. He also found a long laceration on his left shin."

■ Strong conclusions are present in the appellate opinion that in my judgment leave no other alternative than to find from the record that the confession was made by Kiernan under physical coercion and induced by fear and threat. These are stated herein exactly as contained in the opinion of Judge Lumbard:

"In the face of these facts the strategy of the state was tantamount to an admission that it could not fully and honestly meet the claims that Wade *and Kiernan* had been beaten before their arraignment." (Italics mine).

" * * * Taking a man to the state police barracks, keeping him incommunicado for twenty-three hours during which he is permitted no sleep, with no food whatsoever, and only two glasses of liquid after many hours, submitting him to constant questioning despite his denials, is not only degrading and uncivilized but it is obviously coercive. This treatment, without convincing explanation of its reasonableness, is sufficient to indicate that the resulting statement was involuntary and that it was given to put an end to what most of us would consider torture." at page 14.

■ It is inescapable to me that the important facts in the record as thus analyzed and accepted as undisputed and inadequately explained must apply to Kiernan. He remained admittedly with and always in close proximity to Wade at the Troopers' barracks during the same or longer period of interrogation after they were arrested together, and before each was arraigned. The principle of Corbo that the awareness of Kiernan, easy to infer under the circumstances, that Wade was being beaten, as Wade testified on the trial, found as an undisputed fact in this record, would be sufficient, if necessary, to hold that the confession of Kiernan was coerced and induced by fear and threat. U. S. ex rel. Corbo v. LaVallee, 2 Cir., 270 F.2d 513, 518, certiorari denied 361 U.S. 850, 80 S.Ct. 403, 4 L.Ed.2d 382.

The attorney for Kiernan at the state trial objected to the admission of the statement on the ground it had not been shown by the District Attorney or the People that this alleged statement was

given by Kiernan's own free will. (R. 4270-4271). The trial Judge admitted it to be considered against Kiernan "only in the event you (the jury) find it to be a free and voluntary statement." (R. 4272, Charge R. 4271-4272). It is somewhat presumptuous for me to interpret the law of New York after its highest court has written upon the matter but it seems that the trial Judge in this case followed the rule that there was a fair question of fact as to voluntariness which he left to the jury to decide. People v. Randazzio, 194 N.Y. 147, 156, 87 N.E. 112; People v. Doran, 246 N.Y. 409, 416-417, 159 N.E. 379; People v. Weiner, 248 N.Y. 118, 122, 161 N.E. 441.

▇ Under our federal system I must accept the guidance and ruling of the higher federal authority to the best of my ability, and doing so I find the confession was involuntary and coerced by physical force and threat, and the conviction thereunder void. Of course, every law-abiding citizen in this great nation is against coercion by its police officers as much as against sin, but the complex question will always be with us whether the claim of coercion is true or contrived. It appears we shall remain content, and probably rightly so, with drastic remedy, as here, to deter police brutality and unfair official pressure in these confession cases. "Our way of upholding the Constitution is not to strike at the man who breaks it, but to let off somebody else who broke something else." 8 Wigmore, Evidence 3rd ed., 1940, § 2184. Elkins v. U. S., 364 U.S. 206, 216-217, 80 S.Ct. 1437, 4 L.Ed.2d 1669.

In Spano v. New York, 1958, supra, 360 U.S. at page 316, 79 S.Ct. at page 1203, Chief Justice Warren reiterates the delicate nature of the constitutional determination to be made even when rendered by the highest authority in the land. It should be plain that the delicacy is magnified to an immeasurable extent when the decision made alone in effect reverses a deliberate, and I am sure, conscientious judgment of the State's highest Court noted and respected for its progressive and enlightened rulings.

I shall follow the procedure outlined by Judge Smith in United States ex rel. Rogers v. Cummings, D.C.Conn., 154 F. Supp. 663, 665, and favored by Judge Clark in United States ex rel. Rogers v. Richmond, 2 Cir., 271 F.2d 364, 379.

The writ heretofore issued is sustained and the judgment of conviction is set aside as void. See also Cranor v. Gonzales, 9 Cir., 226 F.2d 83, 86; certiorari denied 350 U.S. 935, 76 S.Ct. 307, 100 L.Ed. 816; Chessman v. Teets, 354 U.S. 156, 165-166, 77 S.Ct. 1127, 1 L.Ed.2d 1253. If appeal from the judgment herein is taken, the relator may be held in custody of respondent pending decision on appeal. If appeal is not taken, relator may be held for retrial within a reasonable time of the charges against him. With these conditions, the writ herein is sustained and the relief sought in the petition granted. Form of judgment or order in accordance herewith shall be prepared by the attorney for the relator and consent to the form or substance thereof obtained from the Attorney General and the District Attorney, otherwise to be settled on five days' notice. I am grateful to the District Attorney of Westchester County for furnishing me with the voluminous record again, and shall await his request as to the manner he desires it to be returned.